101 N.J. Super. 346 (1968)
244 A.2d 335
ROBERT S. KREMER, LENORE E. KREMER AND CENTRAL GULF SERVICE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
CITY OF PLAINFIELD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, THE BOARD OF ADJUSTMENT OF THE CITY OF PLAINFIELD, ALFRED SCHMIDT, BUILDING INSPECTOR OF THE CITY OF PLAINFIELD AND H.M.L. CORP., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Argued March 11, 1968.
Decided May 29, 1968.
*347 Mr. James D. Coffee, for the Plaintiffs (Messrs. Lindabury, McCormick & Estabrook, Attorneys).
Mr. Edward Sachar, for Defendants City of Plainfield and Alfred Schmidt, Building Inspector (Messrs. Sachar, Sachar & Bernstein, Attorneys).
Mr. Edward W. Beglin, Jr., for Defendant Board of Adjustment (Messrs. Crane and Beglin, Attorneys).
Mr. Martin E. Kestenbaum, for Defendant H.M.L. Corp. (Messrs. Abrams, Kestenbaum, Hendricks & Reina, Attorneys).
WOOD, WM. FILLMORE, J.C.C. (temporarily assigned).
This action is brought by the plaintiffs in lieu of prerogative writ to set aside the grant of a variance by the Common Council of the City of Plainfield (hereinafter called the Council) to the defendant H.M.L. Corp. (hereinafter called the applicant). The variance was recommended by the Board of Adjustment (hereinafter called the Board).
Plaintiffs contend (1) that the action of the Council was arbitrary, unreasonable and capricious and (2) that a member of the Board, Hyman Abrams, had a conflict of interest arising from the fact that his nephew, Norman Abrams, was *348 a partner in the law firm of Abrams, Kestenbaum, Hendricks & Reina, which represented the applicant before the Board.
The first contention presents no difficulty. The actions of the Board and the Council were clearly justified by the circumstances. The Board found that the proposed use of applicant's property was in keeping with the present character of the neighborhood. This finding is well supported by the facts.
At the request and in the presence of all counsel I viewed the area.
I turn now to a statement of the essential facts. Applicant's property is a vacant lot known as 813-823 West Front Street and is located in "C" Residence Zone. Use of property in that zone for commercial purposes is not permitted by the Zoning Ordinance. Applicant sought and obtained a variance for the purpose of constructing a one-story commercial building to be used for retail sale of motor vehicle tires, tubes and "allied service products," the quoted term being defined as products and services pertaining to the wheels, such as "front-end alignment, brakes, shocks and things of that nature." The motor vehicles to be serviced are to consist of passenger cars and small trucks, with cars accounting for the major portion of the business.
Applicant's lot is located on the southerly side of West Front Street approximately 161 feet west of its intersection with Grant Avenue. On that side of West Front Street there are business establishments extending from the lot several hundred feet in each direction. In the easterly direction there is a continuous line of such establishments for a distance greater than a normal city block. The area between applicant's property and Grant Avenue (i.e., on the southwesterly corner of West Front Street and Grant Avenue) is used for a Gulf service station operated by Plaintiff Central Gulf, Inc. Directly across Grant Avenue (i.e., on the southeasterly corner) is a Sunoco service station. Next come a furniture warehouse outlet, a Midas Muffler shop, eight other business enterprises and one vacant store. On Grant Avenue *349 adjacent to the rear of the Sunoco station and extending a considerable distance in an easterly direction along the rear of the other establishments mentioned is a fuel oil and coal business. Although there is a dwelling house (owned by Plaintiffs Kremer) adjacent to applicant's property on the westerly side, this house is of older vintage and presumably it has been there for a considerable period of time. It is out of character with the surroundings. Adjacent to the house is another vacant lot and adjacent to that lot is another fuel oil and coal business. West of that business area are two buildings that are used respectively for a research plant and a small factory devoted to assembling and packaging novelty items.
The rear of applicant's premises is adjacent to the mainline of the Central Railroad of New Jersey. On the other side of the railroad is a large factory building.
Under the foregoing circumstances the reasonableness of the Council's action cannot be seriously questioned.
Plaintiffs' contention with respect to the conflict of interest of Board Member Hyman Abrams is a much more troublesome one. The precise question here involved, namely, whether a member of a quasi-judicial body may properly participate in a case in which a relative is appearing as attorney or is a member of the firm so appearing, has not previously been decided in this State. Neither is there a statute or rule dealing directly with this question.
I greatly dislike the idea of setting aside proper actions of the Board and Council merely because of some procedural error or impropriety. Consequently I tried my best to find a way to sustain their actions. I had no success. I must reverse.
The attorneys for the defendants argued vigorously that the relationship between Hyman Abrams and Norman Abrams is too remote to give the former a disqualifying interest, or to create a likelihood of such an interest, in the outcome of the case. They cited the cases of Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258 (1958); Calloway *350 v. Borough of Wildwood Crest, 70 N.J. Super. 601 (Law Div. 1961); and Bracey v. City of Long Branch, 73 N.J. Super. 91 (Law Div. 1962) to support their argument.
In Van Itallie a taxpayer challenged the validity of borough zoning ordinances on the ground, among others, that the brother of a councilman who voted for the ordinances was employed as an accountant-bookkeeper for a corporation that was interested in the adoption thereof. The court held that this circumstance is "too remote to be considered as tending improperly to influence the councilman's official judgment."
In Calloway plaintiff sought to have the sale of certain borough land declared illegal and void because, among other things, the broker who represented the highest and successful bidder at the sale was the brother-in-law of the mayor, who joined with the borough commissioners in voting to confirm the sale. The sale was public. The broker received the usual commission paid by the borough for sale of its lands. The court held that the "mayor's interest was so remote and contingent as not to warrant disqualification."
In Bracey plaintiff attacked a zoning ordinance which was adopted pursuant to a "Cooperation Agreement" between the city and the local housing authority and which put into effect the authority's zoning recommendations. Previously the planning board, after extensive public hearings, had determined that the area covered by the ordinance was blighted. Plaintiffs contended, among other things, that the mayor, who was an ex officio member of the planning board and who, as a member of the board of commissioners, voted for the adoption of the ordinance, had a disqualifying interest because his son was a civil service employee of the housing authority. The court held that the mayor's interest was "too remote to require invalidating the ordinance."
On the surface these cases may seem to support the thesis of defendants' attorneys. But a mere surface view of the cases is misleading. If the cases could properly be interpreted as holding that the relationship of brother, brother-in-law *351 or son is too remote to give rise to a conflict of interest, then certainly the relationship of nephew, which is more remote, would not establish such a conflict. However, the cases cannot correctly be so interpreted. Compare Rankin v. Board of Education of Egg Harbor, 135 N.J.L. 299 (E. & A. 1947); and Township Committee of Freehold Tp. v. Gelber, 26 N.J. Super. 388 (App. Div. 1953). On the contrary, in each of the cases cited by counsel the court recognized, at least by implication, that under different circumstances the relationship in question would disqualify the official. In Van Itallie the court did so expressly.
"We recognize that certain circumstances, such as the existence of a substantial association, financial or otherwise, of an official's relative with an interested organization might constitute grounds for disqualification." (at p. 269)
In the cases cited by counsel the pivotal circumstances were not the degree of relationship to the official. Van Itallie and Bracey turned on the type of association the relative had with the interested organization and the amount of interest the relative had in the official's actions. In Van Itallie the court found no disqualification because the official's brother held only a "lower echelon" position in a large corporation that would benefit from the zoning change and there was no evidence that the brother's employment status would be enhanced by the change. In Bracey the action of the official was upheld because the official's son was only a civil service employee of the housing authority and there was no proof that he could possibly benefit from the enactment of the ordinance. Calloway rested upon the court's finding that the official exercised no control over the bidding at the public sale and that therefore he had no opportunity for influencing the sale to his brother-in-law's client.
The distinction between the cited cases and the one at bar is obvious. Norman Abrams is not a subordinate employee of the law firm that represented the applicant before the Board. He is the senior partner. Of course, Hyman *352 Abrams did not lack opportunity to influence the Board's decision.
Although (as above indicated) there is no case, statute or rule precisely in point, this court is not without authoritative guidance. Sufficient direction is furnished by State v. Deutsch, 34 N.J. 190 (1961); N.J.S. 2A:15-49 (a); Rule 1:25B (a) (1); and Canon 13 of the Canons of Judicial Ethics.
In State v. Deutsch our Supreme Court held that the judge in a criminal case should have disqualified himself because he was a brother of the prosecutor.
N.J.S. 2A:15-49 (a) provides:
"No judge of any court shall sit on the trial of or argument of any matter in controversy in a cause pending in his court, when he: Is related in the third degree to any of the parties to the action, which degree shall be computed as at common law."
Rule 1:25B (a) (1) is even broader. It provides:
"A judge of any court shall disqualify himself on his own motion and shall not sit in any matter, when he is related by blood or marriage in the third degree, which degree shall be computed as at common law, to any party to or attorney in the action, or to any attorney or law clerk who is a partner, employer, employee, or office associate of any attorney in the action."
Canon 13 reads:
"A judge should not act in a controversy where a near relative is a party; he should not suffer his conduct to justify the impression that any person can improperly influence him or unduly enjoy his favor, or that he is affected by the kinship, rank, position or influence of any party or other person."
Rule 1:25 makes the Canons of Judicial Ethics applicable to judges of this State.
While the authorities I have cited apply specifically only to judges, there is no sound reason why a lesser standard should govern the conduct of those acting in a quasi-judicial capacity. The need for unquestionable integrity, objectivity and *353 impartiality is just as great for quasi-judicial personnel as for judges.
The relationship between Hyman and Norman Abrams falls within the prohibited degree. See Wilson v. Greenacres Country Club, 41 N.J. Super. 530, 534 (App. Div. 1956). Hence the former was disqualified from participating in the proceedings before the Board. This disqualification makes the Board's action invalid.
I do not question the integrity or the motives of Hyman Abrams. I understand that he had previously been advised by the Board's attorney that he was not disqualified by reason of the uncle-nephew relationship. I have already found the action of the Board was reasonable. There is no evidence of corruption. However, honest motives are not sufficient. The public is entitled to have its representatives perform their duties free from any interest, personal or pecuniary, which has the capacity of affecting their judgment. See Van Itallie v. Borough of Franklin Lakes, supra, 28 N.J., at page 268; Griggs v. Princeton Borough, 33 N.J. 207, 219 (1960); McNamara v. Saddle River Borough, 64 N.J. Super. 426, 429 (App. Div. 1960).
The variance is set aside. This ruling is, of course, without prejudice to applicant's right to reapply before a properly constituted Board.