**JODECO, INC., a Corporation of the State of New Jersey, Plaintiff,**

v.

**Joseph HANN, individually and as Planning Board Vice–Chairman, Albert Spinelli, individually and as Planning Board Chairman, Robert Earl, individually and as member of the Planning Board, James Curran, individually and as member of the Planning Board, Jane Ciminera, individually and as member of the Planning Board, Roberta Acampora, individually and as member of the Planning Board, Robert Flynn, individually and as member of the Zoning Board, Russell Dusewicz, individually and as member of the Zoning Board, Robert Patterson, individually and as member of the Zoning Board, the Planning Board of the Township Voorhees, Zoning Board of the Township of Voorhees, Mayor and Council of the Township of Voorhees and Township of Voorhees, Defendants.**

Civ. A. No. 86–2699 (SSB).

United States District Court,
D. New Jersey.

Dec. 4, 1987.

Michael J. McKenna, Cherry Hill, N.J., for plaintiff.

Thatcher, Moss & McNeill by Frank W. Thatcher, Runnemede, N.J., for all defendants except Joseph Hann.

Rudd, McDonough & Feeley, Collingswood, N.J., for Joseph Hann.

Slimm, Dash & Goldberg by Marc B. Zingarini, Westmont, N.J., for defendants.

Quinlan, Dune & Kelley by Timothy J.P. Quinlan, Cherry Hill, N.J., for defendants Joseph Hann, Albert Spinelli, Robert Earl, James Curran, Jane Ciminera, Roberta Acampora and Planning Board of Voorhees Township.

## OPINION

BROTMAN, District Judge:

### I. INTRODUCTION

This dispute arises out of the rezoning by the Township of Voorhees, New Jersey, of an area encompassing a portion of plaintiff's property. Plaintiff alleges that such a rezoning plan and the municipality's denying him a use variance constitute, *inter alia*, a denial of its due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. This matter is currently before the court on defendants' motion and plaintiff's cross-motion for summary judgment. For the reasons stated below, this court denies plaintiff's motion for summary judgment, and grants partial summary judgment in favor of defendants Mayor of Voorhees Township and all members of the Planning and Zoning Boards.

### II. FACTS AND PROCEDURE

Plaintiff, Jodeco, Inc., a New Jersey corporation, owns in excess of eleven acres of highly developable land located at the entrance to the Township of Voorhees fronting State Highway 73 and County Highways 671 and 685. Situated on this tract of land is a sizable natural body of water, Mill Pond, and a scenic wooded area studded with matured trees and impressive foliage. Plaintiff planned to enhance the natural beauty of its eleven-acre plot through the construction of two pedestrian foot bridges traversing Mill Pond and the beautification of the wooded areas through the creation of outdoor animated holiday displays. At the core of plaintiff's development plan was the construction of a commercial center which included a retail food court, restaurant and garden center.

At the time of plaintiff's initial development plan, the tract of land was situated in an area zoned partly for Commercial–Recreational (hereinafter "CR") use and partly for Highway–Business (hereinafter "HB") use. All proposed uses of the property conformed with the applicable zoning ordinances, except for a structure housing retail stores which extended approximately 120 feet into a district zoned for non-commercial uses.

Plaintiff first presented its proposed plan of development to the Voorhees Township Planning Board (hereinafter the "Planning Board") at an informal hearing on October 24, 1984. At this hearing, the Planning Board responded favorably to plaintiff's proposal and instructed plaintiff to obtain the necessary use permits from the New Jersey Department of Environmental Protection (hereinafter the "DEP") and then return to the Planning Board, at which time it intended to make recommendations to plaintiff as to how to proceed with the project. During this interim period, the Planning Board granted plaintiff's request for a temporary use permit to operate only its garden center.

On March 27, 1985, plaintiff returned to the Planning Board seeking an assessment of its land development plan and an addi-

tional temporary use permit to conduct retail sales. The Planning Board reserved judgment on the plan, but granted the use permit for a six-month period. From March through December of 1985, plaintiff appeared before the Planning Board on several occasions to update its progress in obtaining DEP approval and to seek further guidance on the project. At the conclusion of each session, the Planning Board directed plaintiff to continue the use of its property in accordance with the restrictions of the temporary use permits and to keep the Planning Board apprised of any further developments.

On December 19, 1985, the Planning Board sent a letter to the Mayor and Town Council of Voorhees recommending that (1) the existing Highway–Business zone be extended in conformity with plaintiff's proposal and (2) the plaintiff's development plan be excluded from the Township's current investigation into the possible rezoning of property along State Highway 73. The Township had recently engaged the services of the Ragan Design Group to conduct a "Route 73 Corridor Study" regarding the rezoning of property along State Highway 73. Pursuant to this "Master Plan," plaintiff's eleven-acre plot would be zoned as "02" property, which permitted the construction of offices, restaurants, hotels and warehouses, but prohibited all retail uses. Thus, plaintiff interpreted the Planning Board's exclusion of his project from the Corridor Study as a sign of approval, since inclusion in the Study would have precluded a significant part of plaintiff's proposed development.

On January 1, 1986, as a result of changes in the elected officials in the Township of Voorhees, new members of both the Planning and Zoning Boards were appointed. One such new member appointed to the Planning Board was defendant Joseph Hann, who at the time of his appointment was the owner of the Green Leas Garden Center on Route 73, an establishment in direct proximity to the plaintiff's own proposed garden center. One week after the change in composition of

the two Boards, plaintiff applied for a full site approval for the entire development project together with a use variance for the portion of the building overlapping the zoning line. The application was scheduled to be heard by the Zoning Board on February 6, 1986.

On that date, the Zoning Board purportedly received a letter from Planning Board Secretary Larry Ragone expressing the concern of a "majority" of Planning Board members regarding the adverse impact that plaintiff's application might have on the on-going Corridor Study, and recommending that the Zoning Board "postpone any final decision on th[e] application until the study is adopted by the Planning Board." (*See* Plaintiff's Brief in Opposition to Summary Judgment Motion and in Support of Plaintiff's Cross Motion for Summary Judgment, Exhibit 7). Due to conflicting factual submissions by the parties, it is unclear on what particular date the Planning Board decided to include plaintiff's project in the Corridor Study and when the Planning Board formally adopted the Study's rezoning recommendations. However, it appears that at some point during the month of February 1986, the Planning Board concluded that plaintiff's project should not be exempted from the rezoning of Highway 73.

On March 6, 1986, at a public meeting of the Zoning Board, plaintiff's motion for a zoning variance from the portion of his property zoned for Highway–Business fell one vote short of passing. However, the seven-member Zoning Board unanimously granted plaintiff's second motion for a one-year extension of the temporary use permit. On April 14, 1986, a public meeting of the Town Council of Voorhees was held at which the plaintiff was present, and the proposal to rezone the Highway 73 area was formally adopted by a vote of the Township Committee and the Mayor of Voorhees. The matter was finally put to rest on June 5, 1986, at which time plaintiff's second application for a use variance was denied, once again, by a single vote.[1]

---

**1.** The record is unclear as to whether the purpose of plaintiff's second formal appearance be-

On July 11, 1986, plaintiff brought suit in this court against the Planning Board and six of its members, both individually and in their official capacities; the Zoning Board and three of its members, both individually and in their official capacities; the Mayor and the Voorhees Town Council; and the Township of Voorhees, itself. The complaint alleges a violation of plaintiff's civil rights under 42 U.S.C. §§ 1983 and 1985, breach of state and federal antitrust laws and deprivation of plaintiff's due process rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, the Municipal Land Use Law and the New Jersey Open Public Meetings Act. In its prayer for relief, plaintiff seeks a declaratory judgment voiding the rezoning of plaintiff's property and the Zoning Board's decision to deny it a use variance, as well as a declaration that Planning Board member Joseph Hann violated the conflict of interest provision of the New Jersey Municipal Land Use Law by voting on plaintiff's development plan while in possession of an ownership interest in direct competition with plaintiff's garden center. In addition, plaintiff asks this court to compel the defendants to grant the necessary approvals and permits to allow its project to proceed. Finally, plaintiff seeks $250,000 in compensatory damages against each individual defendant, $250,000 in consequential damages against each individual defendant and punitive damages against defendant Hann in the amount of $1.5 million, as well as $50,000 against all of the other named defendants.

## III. DISCUSSION

### A. *Immunities Defense*

As a threshold matter, all individual members of the Zoning and Planning Boards, the Mayor and the members of the Voorhees Township Committee [2] move for summary judgment asserting that they are entitled to absolute immunity because, in

fore the Zoning Board was to seek reconsideration of the Board's earlier denial of its use variance or an exemption from the new zoning ordinance affecting the Highway 73 property.

adopting the rezoning recommendations of the Corridor Study and denying plaintiff a use variance therefrom, they acted in a legislative capacity. In the alternative, defendants argue that they are entitled to qualified good-faith immunity because their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Defendants Mayor, Planning and Zoning Board members (hereinafter "Individual Defendants") premise their entitlement to absolute immunity solely on the legislative character of their conduct. This court agrees that the actions taken by the Mayor and the Planning Board members pursuant to the rezoning of property surrounding plaintiff's land were legislative in nature. However, this court cannot reach a similar conclusion regarding the actions of the Zoning Board members. Rather, on the facts submitted, this court believes that their conduct was of a quasi-judicial nature, thus also absolutely immunizing them from civil damages. Therefore, for the reasons stated below, this court grants Individual Defendants' motion for summary judgment.

### 1. *Legislative Immunity*

This court commences its analysis with the well-recognized principle that state legislators are entitled to absolute immunity for acts performed in their legislative capacity. *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). In reaching its holding in *Tenney*, the Supreme Court stressed the need to ensure unfettered decision-making by those who are vested with the power to create policies which impact on the lives of a great many citizens:

> Legislators are immune from deterrents to the uninhibited discharge of

2. Defendants' brief erroneously includes the Township Committee members as co-movants in their summary judgment motion. Only the Township Committee, as an entity of the municipality of Voorhees, and not its individual members, is the proper subject of this suit.

their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives.

*Id.* at 377, 71 S.Ct at 788. The Court extended its *Tenney* rationale to absolutely immunize from damages members of a regional planning board acting in a legislative capacity to coordinate and regulate land development in the Lake Tahoe Basin region. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). The Court concluded that its reasoning in *Tenney* was "equally applicable to federal, state and regional legislators," *id.* at 405, 99 S.Ct. at 1179, but expressly left open the issue of absolute immunity for "individuals performing legislative functions at the purely local level." *Id.* at 404 n. 26, 99 S.Ct. at 1179 n. 26.

In the absence of an affirmative declaration by the Supreme Court, the Third Circuit has joined at least six other circuit courts in holding that members of municipal agencies are absolutely immune from suit where their function is legislative in character. *See Aitchison v. Raffiani,* 708 F.2d 96 (3d Cir.1983). *See also Reed v. Village of Sherwood,* 704 F.2d 943 (7th Cir.1983); *Espanola Way Corp. v. Meyerson,* 690 F.2d 827 (11th Cir.1982), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983); *Kuzinich v. County of Santa Clara,* 689 F.2d 1345 (9th Cir.1982); *Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir.1981); *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607 (8th Cir.1980); *Bruce v. Riddle,* 631 F.2d 272 (4th Cir. 1980). We note that no circuit court since the Supreme Court's decision in *Lake Country Estates* has held the Court's reasoning in that case inapplicable to municipal legislators.

An extensive review of the case law in the area of legislative immunity leads this court to the conclusion that there is no material distinction between the functions performed by state or regional legislators and those performed by municipal legislators that would warrant shielding the former from damages liability while not according the same protection to the latter. In fact, this court believes that the need to immunize local officials acting legislatively is even more compelling than the need to protect their state or regional counterparts. The financial and professional incentives frequently available to individuals seeking positions in state or federal government are often absent at the municipal level. Local officials often make great personal sacrifices in order to serve on behalf of their communities. The fees of a damages suit likely would have a greater chilling effect on those seeking local public office than those seeking office at the state or federal level. Furthermore, this court notes that because municipal legislators are closer to their constituents, they are more vulnerable to litigation and its deterrent effect, *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d at 612, and less able to defend against lawsuits caused by the passage of legislation. *Ligon v. State of Md.,* 448 F.Supp. 935, 947 (D.Md.1977). This is particularly true in the area of zoning and land use, "where decisions may have an immediate quantifiable impact on both the value and development of property, [and therefore] local legislators should be free to act solely for the public good without the specter of personal liability with the passage of each zoning ordinance." *Id.*

This court does not accept the proposition that the imposition of civil liability is required to deter lawless conduct by legislative officials. The doctrine of absolute immunity is not founded "on any particular set of state rules or procedures available to discipline erring legislators;" rather, it has its roots in the need to protect the "public good." *Lake Country Estates,* 440 U.S. at 404–405, 99 S.Ct. at 1179. So long as there exist institutional checks on unconstitutional conduct, it is inconsequential just what form those checks take. In the absence of a civil remedy against the individual legislators, the plaintiff injured by a zoning

ordinance has numerous remedies available, including: (1) challenging the validity of the zoning legislation on direct appeal; (2) challenging the constitutionality of the ordinance in federal court; (3) bringing a criminal action against the constitutional offenders pursuant to 18 U.S.C. § 242, the criminal analog of § 1983; and (4) if the alleged offender is an elected official, seeking his or her removal from office in the next election. *Gorman Towers*, 626 F.2d at 613. Having found no persuasive argument in the case law for distinguishing municipal from state or regional legislators for purposes of immunity, this court holds that local officials performing legislative functions are absolutely immune from damages in §§ 1983 and 1985 suits.

However the inquiry does not end here. A prerequisite for the granting of legislative immunity is the presence of legislative, rather than administrative, executive, or managerial conduct. Individual Defendants argue that they were acting in their legislative capacity because, in adopting the recommendations of the Corridor Study and denying plaintiff a use variance, they were creating municipal zoning policy and setting precedential guidelines for those landowners with property in the rezoned area. Individual Defendants conclude that the actions taken by the Planning and Zoning Board members in approving the Master Plan to rezone the property along State Highway 73 affected, either directly or indirectly, all of the citizens of the Voorhees Township and, therefore, must be considered legislative in character.

The Supreme Court has held that the zoning of property is ordinarily a legislative function. *See Village of Belle Terre v. Boraas*, 416 U.S. 1, 4, 9, 94 S.Ct. 1536, 1538–39, 1541, 39 L.Ed.2d 797 (1974). However, some courts have concluded that local zoning officials exercise merely limited discretionary functions and are entitled only to qualified immunity. *See, e.g., Altaire Builders, Inc. v. Village of Horseheads*, 551 F.Supp. 1066, 1074 (W.D.N.Y. 1982) (actions of members of Village Board of Trustees in rejecting plaintiff's planned unit development application not legislative because they failed to effectuate a wide-spread zoning change); *Adler v. Lynch*, 415 F.Supp. 705, 712–13 (D.Neb.1976) (conduct of elected members of local governing board executive, rather than legislative, because officials exercised limited jurisdiction over matters specifically committed to their discretion and did not "conceive public policy from the myriad of policy options open to the sovereign").

In determining the type of immunity accorded a public official, the court must look to the nature of the governmental *function* being performed, and not either his or her position in government or official title. *See Butz v. Economou*, 438 U.S. 478, 511–517, 98 S.Ct. 2894, 2913–16, 57 L.Ed.2d 895 (1978). Several courts have held that if the acts of the zoning official involve the *enactment* or *amendment* of zoning laws, they may be treated as legislative; however, if they involve merely the *enforcement* of the zoning laws then they are properly classified as executive or administrative. *See Altaire Builders*, 551 F.Supp. at 1073. *See also Lake Country Estates v. Tahoe Planning Agency, supra*, 440 U.S. at 406, 99 S.Ct. at 1179–80; *Fralin & Waldron, Inc. v. County of Hendrico, Va.*, 474 F.Supp. 1315, 1320 (E.D.Va.1979); *Kinderhill Farm Breeding Associates v. Appel*, 450 F.Supp. 134, 136 (S.D.N.Y.1978). One court even suggested a two-pronged test for determining whether a local official's conduct was legislative: (1) the court must first discern "the type of underlying facts on which the decision is based," and (2) then consider "whether the government action results in a differential impact on specifiable individuals." *Visser v. Magnarelli*, 542 F.Supp. 1331, 1333 (N.D.N.Y.1982) *citing Yakus v. United States*, 321 U.S. 414, 424, 64 S.Ct. 660, 667, 88 L.Ed. 834 (1944). *See also City of Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 683–85, 96 S.Ct. 2358, 2366–67, 49 L.Ed.2d 132 (1976) (Stevens, J., dissenting) (noting that few state courts have held rezoning to be administrative in nature where specific parcels and particular issues are involved).

■ In the absence of a definitive Third Circuit standard for distinguishing legislative from non-legislative functions, this

court believes that the appropriate inquiry should be whether the conduct of the defendant zoning officials involved either the enactment or amendment of zoning legislation or simply the enforcement of already existing zoning laws. Acts performed pursuant to the former are legislative in character and the officials performing them are entitled to absolute immunity, while acts performed pursuant to the latter are administrative, executive, or ministerial and the officials performing them may only receive the protection of qualified immunity. Factored into this equation should be the impact that such official conduct has on the citizens of the municipality. Official acts affecting the community at-large might tip the balance in favor of a finding of legislative conduct, while acts directed at one or a few individuals might be dispositive of executive or administrative conduct. *See, e.g., Rogin v. Bensalem Township,* 616 F.2d 680, 693 n. 60 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981); *Coffey v. Quinn,* 578 F.Supp. 1464, 1467 (N.D.Ill.1983); *Three Rivers Cablevision v. City of Pittsburgh,* 502 F.Supp. 1118 (W.D.Pa.1980).

■ This court recognizes that "no bright line delineates a township's administrative actions from its legislative functions." *Kuchka v. Kile,* 634 F.Supp. 502, 508 (M.D.Pa.1985), *citing Detz v. Hoover,* 539 F.Supp. 532, 534 (E.D.Pa.1982). Nonetheless, this court believes that the evidence submitted supports a determination that the Planning Board members, as well as the Mayor of the Voorhees Township, acted in a legislative capacity. This court cannot reach the same conclusion regarding the actions of the Zoning Board members.

Pursuant to New Jersey statute, a municipal planning board is vested with the wide-ranging authority to "adopt or amend a master plan or component parts thereof, to guide the use of lands within the municipality in a manner which protects public health and safety and promotes the general welfare." N.J.S.A. 40:55D–28(a). A "master plan" must contain, *inter alia,* "a statement of objectives, principles, assumptions, policies and standards upon which the constituent proposals for the physical, economic and social development of the municipality is based." N.J.S.A. 40:55D–28(b)(1). Therefore, by adopting or amending proposals to rezone property, a planning board possesses the unequivocal statutory power to make decisions affecting the entire municipality. It is precisely this type of power that the Planning Board wielded in this case.

The primary responsibility of the Planning Board members was to determine the fate of the Township-commissioned Route 73 Corridor Study. The Planning Board members, alone, had the authority to quash the proposals contained in the Study or recommend them to the Township Committee for approval. The Master Plan called for the rezoning of the property along State Highway 73 from Highway–Business and Commercial–Recreation to "Office," a proposal which effectively prohibited the establishment of plaintiff's retail stores. The Plan was voted on and approved by the Planning Board for recommendation to the Township Committee. This review and recommendation procedure lies at the very heart of the Township's zoning enactment process, and no activity could possibly have been more legislative in character. The Planning Board members were not simply enforcing a zoning ordinance; rather, they actively participated in enacting one. The fact that they were not the "final word" on the Master Plan does not detract from the legislative nature of their conduct.

■ Similarly, this court holds that the Mayor of the Township of Voorhees acted legislatively in casting his vote, along with the members of the Township Committee, in favor of adopting the rezoning plan. It has been recognized that the mayor of a municipality, although generally considered the chief executive officer of the city, can perform legislative functions such as vetoing an ordinance passed by the city's legislative body, *Hernandez,* 643 F.2d at 1193–94, and casting his ballot on a piece of local legislation. *See Aitchison v. Raffiani,* 708 F.2d 96, 99 (3d Cir.1983) (complaint alleging plaintiff's property deprivation resulting

from mayor's affirmative vote on a zoning ordinance unequivocally established mayor's active participation in the legislative process). Since the record reveals that the Mayor's involvement in the rezoning of plaintiff's property did not extend beyond simply voting in favor of the Master Plan, it is patently clear that he was acting solely in a legislative capacity, and, therefore, entitled to absolute immunity from civil suit.

■ However, this court believes that the actions of the Zoning Board members are distinguishable from those of the Planning Board and the Mayor. In sharp contrast to the Planning Board, the Zoning Board did not have a hand in shaping the zoning policy of the Township. Its role was confined to ruling on plaintiff's variance applications. The Zoning Board never conducted a public hearing the subject of which was the viability of adopting the Master Plan. The two Zoning Board hearings in which the plaintiff participated were held specifically to address the merits of plaintiff's variance applications. In fact, the Zoning Board, at its March 6, 1986 meeting, voted to "table" the discussion on plaintiff's application pending a final decision by the Planning Board on the Master Plan. The vote conducted by the Zoning Board at it's May 1, 1986 meeting involved solely the fate of plaintiff's petition for a use variance, and nothing more.

In their decision to deny plaintiff's application, the Zoning Board members were neither enacting nor amending zoning legislation; they were simply construing the existing ordinances and applying them to a particular parcel of land. Their decision did not have a wide-ranging effect on the municipality and may, in fact, have impacted no one other than the plaintiff. Therefore, this court concludes that the actions of defendant Zoning Board members do not meet the standard of legislative conduct set out above and are not entitled to absolute protection from civil damages under a legislative immunity theory. *See Rogin,* 616 F.2d at 693 n. 60 (denial of use variance considered an administrative act since it involves the application of local zoning policy to individual landowner); *Fralin & Wal-*

*dron, Inc. v. County of Henrico, Va.,* 474 F.Supp. 1315, 1321 (E.D.Va.1979) (refusal to except from zoning ordinance plaintiff's development plan constituted executive, not legislative, action); *Adler v. Lynch, supra,* 415 F.Supp. at 712 (action taken to amend plaintiff's use variance akin to that of executive official, who exhibits only minimal discretion).

### 2. *Quasi–Judicial Immunity*

■ In part III(A)(1) of this opinion, the court concluded that members of the Voorhees Township Planning Board acted legislatively in approving the municipality's Master Plan to rezone the property along Highway 73. The court's determination was predicated on the uniquely legislative conduct of the Planning Board members in the case at bar. Any decision in the area of legislative immunity is necessarily fact-specific and this court's holding should not be interpreted to mean that the actions of zoning officials are presumptively legislative. Although the court concluded that on the evidence submitted the Planning Board members were legislatively immune from suit, this court believes that the same result could have been reached more appropriately by characterizing the functions of defendant Board members as "quasi-judicial" in nature. The court reaches the same conclusion with regard to the conduct of the Zoning Board members. It is this court's considered view that the duties of planning and zoning board members in the State of New Jersey are so integrally related to the judicial process as to warrant shielding from liability those individuals acting in performance of them. Both the statutorily-defined powers of the two municipal agencies and the position of the New Jersey courts support this conclusion.

It is well-settled that a judge is entitled to absolute immunity for all acts committed within his judicial jurisdiction, including grave procedural errors. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed. 2d 331 (1978); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The rationale underlying this grant of immunity is that it benefits the public interest by ensuring judicial independence and by

preventing judges from being subjected to vexatious actions. *Powell v. Nigro,* 601 F.Supp. 144, 147 (D.C.D.C.1985). If a civil action could be maintained against a judge by virtue of an allegation of malice, or even negligence, judges would lose "that independence without which no judiciary can either be respectful or useful." *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872). Furthermore, there are certain built-in safeguards in the judicial process which tend to reduce the need for civil actions against judges as a means of checking unconstitutional conduct, including the insulation of the judge from political influence, the role of precedent in resolving controversies, the adversarial nature of the legal process and the correctability of error on appeal. *Butz,* 438 U.S. at 512, 98 S.Ct. at 2914.

For these same policy reasons, absolute immunity has been extended to protect those nonjudicial officials whose activities are integrally related to the judicial process and involve the exercise of discretion comparable to that of a judge. *See Powell v. Nigro,* 601 F.Supp. at 147. *See also Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutor has absolute immunity in initiating and pursuing a criminal prosecution for those activities intimately associated with the judicial phase of the criminal process); *Simons v. Bellinger,* 643 F.2d 774 (D.C.Cir.1980) (D.C. Court of Appeals Committee on Unauthorized Practice of Law has absolute immunity in exercising inherent judicial power delegated to it by the court); *Ashbrook v. Hoffman,* 617 F.2d 474 (7th Cir.1980) (commissioners appointed by the court to conduct a partition sale of divorced plaintiff's property sufficiently related to judicial process to entitle them to quasi-judicial immunity); *Kermit Construction Corp. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1 (1st Cir.1976) (receiver who carries out orders of his appointing judge absolutely immune); *Lockhart v. Hoenstine,* 411 F.2d 455 (3d Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969) (prothonotary, acting pursuant to court directive, entitled to absolute immunity); *Stift v. Lynch,* 267 F.2d 237 (7th Cir.1959) (justices

of the peace protected by absolute immunity). Therefore, at the heart of the doctrine of quasi-judicial immunity lies the notion that "the acts, alleged to have been wrongful, were committed by the officer in the performance of an integral part of the judicial process." *Robichaud v. Ronan,* 351 F.2d 533, 536 (9th Cir.1965).

It is well-settled that federal, not state, law determines the adequacy of defenses asserted in civil rights actions brought pursuant to 42 U.S.C. § 1983. However, a court may consider relevant state law in determining the appropriate federal immunities standard to apply. *Qualls v. Parrish,* 534 F.2d 690, 694 (6th Cir.1976). This court finds the powers delegated to municipal agencies, generally, and zoning boards, specifically, by the New Jersey Municipal Land Use Law, N.J.S.A. 40:55D–1 *et seq.,* dispositive of the quasi-judicial character of defendant Zoning Board and its members.

Under N.J.S.A. 40:55D–10, a municipal zoning agency is required to hold a public hearing on each application for development, adoption, revision or amendments of a "master plan." N.J.S.A. 40:55D–10(a). At such hearings, which are required to be recorded either stenographically or electronically, the presiding officer has the authority to administer oaths and issue subpoenas compelling the production of documents and the attendance of witnesses, who must give sworn testimony and be subjected to the rigors of cross-examination. N.J.S.A. 40:55D–10(c), (d), (f). Although technical rules of evidence are not utilized, the agency has the power to "exclude irrelevant, immaterial or unduly repetitious evidence." N.J.S.A. 40:55D–10(e). Furthermore, much like any judicial tribunal, the agency is required to include in its written decision on each zoning application thorough findings of fact and conclusions based thereon. N.J.S.A. 40:55D–10(g). Thus, a decision by any zoning body which is devoid of any justification or explanation for its position can be attacked under the statute as arbitrary and capricious. *See, e.g., Exxon Co., U.S.A. v. Board of Adjustment,* 196 N.J.Super. 183, 194, 481 A.2d 1172 (Law Div.1984); *Kessler v. Bowker,*

174 N.J.Super. 478, 488, 417 A.2d 34 (App. Div.1979), *certif. denied,* 85 N.J. 99, 425 A.2d 264 (1980).

That the zoning and planning boards perform quasi-judicial functions is not only evinced in the language of the Municipal Land Use Law, but is also supported by decisions of the New Jersey courts. *See Anastasio v. Planning Bd. of Twp. of West Orange,* 209 N.J.Super. 499, 507 A.2d 1194 (App.Div.), *certif. denied,* 107 N.J. 46, 526 A.2d 136 (1986); *Centennial Land & Dev. Co. v. Twp. of Medford,* 165 N.J.Super. 220, 397 A.2d 1136 (Law Div.1979); *Sander v. Planning Bd. of Twp. of Warren,* 140 N.J.Super. 386, 356 A.2d 411 (App. Div.1976). The leading New Jersey case addressing this issue, *Centennial Land,* involved a § 1983 action brought against, *inter alia,* the municipal planning and zoning boards, and their respective members, for denial of plaintiff's application for a use variance. In granting the board members' motion for summary judgment, the court concluded that since the public hearings involving the zoning and planning boards "share[d] enough of the characteristics of the judicial process to warrant an absolute privilege," their respective members necessarily operated in a quasi-judicial capacity and were therefore properly immune from suit. 165 N.J.Super. at 230, 397 A.2d 1136. In reaching its decision, the court noted the existence of important safeguards against the unconstitutional conduct of zoning officials which vitiated the need to impose burdensome damage liability on them, including the fact that: (1) zoning board members are subject to the code of judicial conduct, *Kremer v. Plainfield,* 101 N.J.Super. 346, 352–53, 244 A.2d 335 (Law Div. 1968); (2) zoning officials are insulated from political influences due to a prohibition of their holding elective office, N.J.S. A. 40:55D–69; (3) the meetings are governed by the strict requirements of the Open Public Meetings Act, N.J.S.A. 10:4–6; and (4) erroneous decisions are correctable on appeal. N.J.S.A. 40:55D–17(a). *Centennial Land,* 165 N.J.Super. at 230–32, 397 A.2d 1136.

Of paramount importance to the *Centennial* Court was the deterrent effect that permitting such suits would have on citizens' participation in municipal government:

> ... [M]any of these local zoning officials serve voluntarily, often at night, without remuneration; yet they expend extensive time and effort in preparing and participating in the land use development of the community. Were this court to hold that these board members are without any immunity, the inevitable consequence, would be to deter intelligent civic-minded persons from serving on municipal land use boards. The fear of incurring great expense in attorney's fees, losing time from employment and suffering the anxiety and distress resulting therefrom, could have no other effect.

*Id.* at 228, 397 A.2d 1136. Absolute immunity, the court concluded, perhaps more than any other protective device, "would increase the zoning members' abilities to exercise their discretion in an intelligent and impartial fashion without consideration of sources foreign to the law." *Id.* at 233, 397 A.2d 1136.

A recent Appellate Division opinion relied on the Court's reasoning in *Centennial* to hold members of a municipal planning board absolutely immune from damages in a § 1983 action. *Anastasio,* 209 N.J.Super. at 526, 507 A.2d 1194. In its opinion, the *Anastasio* Court stressed the need to preserve the freedom of zoning officials to exercise their quasi-judicial decision-making functions by ensuring that aggrieved plaintiffs, "who will frequently have significant financial resources and the ability to litigate, [do] not bring them into court." *Id.* The court added that immunizing local zoning officials from liability would not leave injured plaintiffs without a damage remedy in light of the Supreme Court's earlier ruling that municipal entities possess no civil immunities in § 1983 suits. *Id.* at 525, 507 A.2d 1194. *See also Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

Hence, for the foregoing reasons, this court holds that defendant members of the Zoning Board of the Township of Voorhees, in executing their statutorily-created func-

tions, acted in a quasi-judicial capacity and are entitled to absolute immunity.

### 3. *Immunities of Municipalities and Their Entities*

■ In its prayer for relief, plaintiff seeks, *inter alia,* compensatory damages in the amount of $250,000, consequential damages in the amount of $250,000 and punitive damages in the amount of $50,000 against each individual defendant, with the exception of defendant Planning Board member Hann, from whom it seeks $1.5 million in punitive damages. Notwithstanding this court's conclusion that the planning and zoning boards in the State of New Jersey are independent statutory creations performing quasi-judicial functions, this court recognizes that defendants Planning and Zoning Boards, the Township Committee and the Township of Voorhees are not entitled to any form of immunity from civil damages in § 1983 suits. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Of paramount importance to the Supreme Court in its *Owen* opinion was the fact that "victims of municipal malfeasance would be left remediless" if municipalities and their entities were shielded from liability. *Id.* at 651, 100 S.Ct. at 1415. In light of the Supreme Court's stated policy consideration in *Owen,* this court notes that, despite the dismissal of Individual Defendants from this suit, plaintiff's claims are still viable. It will suffer no constitutional deprivation resulting from the immunization from liability of the Planning and Zoning Board members.

■ In addition, plaintiff's claim for punitive damages against the Township and its municipal entities is dismissed in accordance with the Supreme Court's 1981 ruling that municipalities are absolutely immune from punitive damages in suits brought under § 1983. *See Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). In that case, the Court found dispositive the presence at common law of a municipal immunity from exemplary damages and the compelling policy consideration that "such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised." *Id.* at 263, 101 S.Ct. at 2757. "It is far from clear," the Court concluded, "that municipal officials, including those at the policymaking level, would be deterred from wrongdoing by the knowledge that large punitive damage awards could be assessed based on the wealth of their municipality." *Id.* at 268, 101 S.Ct. at 2760.

### B. *Genuine Issues of Material Fact*

The standard for granting summary judgment is a stringent one. Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118 (3d Cir.1983). In deciding whether an issue of material fact does exist, the court is required to view all doubt in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 (3d Cir.1983), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Knoll v. Springfield Township School Dist.,* 699 F.2d 137, 145 (3d Cir.1983); *Smith v. Pittsburgh Gage and Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Supreme Court has interpreted Fed.R.Civ.P. 56(c) as mandating:

> ... the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, if the plaintiff's evidence is merely "colorable" or is "not significantly probative,"

summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. at 2511.

■ Defendants Planning and Zoning Boards, Township Committee and Township of Voorhees (hereinafter "Municipal Defendants") move for summary judgment alleging that there exist no triable issues of fact concerning whether the plaintiff received a fair and impartial hearing regarding his proposed plan of development. In its opposition to defendants' motion, plaintiff files a cross-motion for summary judgment alleging, *inter alia*, that the evidence adduced through discovery unequivocally reveals conduct resulting in a deprivation of plaintiff's procedural due process rights and, thus, warranting a judgment in its favor as a matter of law. Having determined that there currently exist several crucial facts still in dispute, this court denies both Municipal Defendants' motion and plaintiff's cross-motion for summary judgment.

At the very heart of this case is the decision of the Planning Board to include plaintiff's development project in the Township's master rezoning plan. The questions of when, why and how the Planning Board took such action remain, as of yet, unanswered. Plaintiff asserts that the Planning Board members held two secret meetings in February of 1986, during which time they purportedly decided to include plaintiff's property in the Township's rezoning plan. Plaintiff argues that it was neither notified of nor afforded an opportunity to be heard at either of these two meetings. Municipal Defendants cite February 5, 1986, as the date on which the Planning Board, at a meeting allegedly open to members of the public, made its decision to include plaintiff's development project in the Township's Master Plan. At first blush, a letter from Planning Board Secretary Larry Ragone to the Zoning Board, dated February 6, 1986, appears to corroborate Municipal Defendants' version of the facts. The letter expresses the Planning Board's reservations regarding plaintiff's project and concludes that "[i]t is the recommendation the Planning Board members present at their February 5, 1986 meeting

that the Zoning Board postpone any final decision on this application until the study is adopted by the Planning Board." (*See* Plaintiff's Brief in Opposition to Defendants' Summary Judgment Motion and in Support of Plaintiff's Cross–Motion for Summary Judgment, Exhibit 7). However, nowhere in either the transcript or the minutes of that hearing is any reference made to the inclusion of plaintiff's development project in the municipality's rezoning plan. (*Id.*, Exhibit 9; *see also* Transcript of Voorhees Township Planning Board, February 5, 1986). In fact, the transcript of the February 5 proceeding evinces an intent on the part of the Planning Board members actually to postpone the discussion of plaintiff's project for "two weeks, until the next board meeting," rather than addressing the actual merits of plaintiff's application at the current meeting. Transcript of Planning Board Hearing, February 5, 1986, at 2).

Furthermore, plaintiff claims that through discovery, it has learned of an "illegal, off-record" meeting held on February 25, 1986, during which the Planning Board members purportedly reached their final decision on plaintiff's development project. (Plaintiff's Brief at 24). Not only was plaintiff provided with no notification of or opportunity to be heard at this alleged meeting, but to date, Municipal Defendants have not complied with plaintiff's request for the transcript, agenda or minutes of that potentially crucial Planning Board session. (*Id.*) Since the crux of plaintiff's complaint alleges numerous procedural due process violations and since the record is shrouded in so much mystery regarding the date on which the Planning Board cast its final word on plaintiff's project, this court cannot hold as a matter of law that Municipal Defendants' conduct was not constitutionally infirm. Nor, of course, can this court enter summary judgment in favor of plaintiff on the basis of such a scant record. Therefore, except for this court's holding in Sections III(A) and (B) above, defendants' motion and plain-

tiff's cross-motion for summary judgment are denied.