

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-7-1994

# Acierno v. Cloutier

Precedential or Non-Precedential:

Docket 93-7456

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Acierno v. Cloutier" (1994). *1994 Decisions.* Paper 75.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/75

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————————

Nos. 93-7456 & 93-7617

—————————————

FRANK E. ACIERNO

v.

PHILIP CLOUTIER; RICHARD CECIL; ROBERT POWELL;
ROBERT WOODS; CHRISTOPHER ROBERTS; PENROSE HOLLINS;
KAREN VENEZKY; NEW CASTLE COUNTY; MICHAEL MITCHELL,

> Philip Cloutier, Richard Cecil,
> Robert Powell, Robert Woods,
> Christopher Roberts, Penrose
> Hollins and Karen Venezky,
> Appellants in No. 93-7456
>
> Michael T. Mitchell,
> Appellant in No. 93-7617

—————————————

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 92-00385)

—————————————

Argued March 25, 1994

Before: GREENBERG, COWEN and NYGAARD, Circuit Judges

(Filed July 7, 1994)

Collins J. Seitz, Jr. (argued)
Connolly, Bove, Lodge & Hutz
1220 Market Building
P.O. Box 2207
Wilmington, DE  19899

    COUNSEL FOR APPELLANTS
    PHILIP CLOUTIER, RICHARD CECIL,
    ROBERT POWELL, ROBERT WOODS,
    CHRISTOPHER ROBERTS, PENROSE
    HOLLINS, KAREN VENEZKY AND NEW CASTLE
    COUNTY

Barry M. Willoughby (argued)

1

Young, Conaway, Stargatt & Taylor
P.O. Box 391
Rodney Square North, 11th Floor
Wilmington, DE  19899-0391
          COUNSEL FOR APPELLANT
          MICHAEL T. MITCHELL


Thomas S. Neuberger (argued)
Suite 702
200 West Ninth Street
Ninth Street Plaza
Wilmington, DE  19801-1646

Carl A. Agostini
Agostini and Levitsky
623 King Street, P.O. Box 2323
Wilmington, DE  19899

John J. Yannacone
Yannacone, Fay, Baldo & Daly
200 East State Street, Suite 107
Media, PA  19063

          COUNSEL FOR APPELLEE
          FRANK E. ACIERNO

---

**OPINION OF THE COURT**

---

COWEN, Circuit Judge.


        In another chapter in the extensive volume of litigation between Frank Acierno and the members of the New Castle County, Delaware Council ("County Council") concerning Acierno's various development projects, we are called upon to decide whether the members of the County Council are entitled to immunity from suit for their actions of enacting two ordinances which down-zoned Acierno's commercial property.  These appeals

2

must be dismissed for lack of appellate jurisdiction insofar as they involve the present members of the County Council from whom Acierno seeks prospective injunctive relief. We further conclude that the remaining defendants are immune from suit because the actions they took with respect to Acierno's commercial property were substantively and procedurally legislative in nature or did not abrogate a clearly established property interest. Accordingly, we will reverse the district court's denial of the defendants' motion for summary judgment on immunity grounds insofar as it involves the former members of the County Council. We will also reverse the district court's order denying First Assistant County Attorney Mitchell's motion to dismiss on immunity grounds.

## I.

### A. Factual Background

Plaintiff Frank E. Acierno, a real estate developer, purchased a thirty-eight acre parcel of land located in New Castle County, Delaware (the "property") on October 5, 1984 for slightly more than $1,000,000. As of April, 1971, the property had a classification under New Castle County's zoning ordinance as a "diversified planned unit development" ("DPUD"). A major land development plan for the property was approved by the County and recorded on April 11, 1974. The approved record development plan provided for the construction of a 322 unit apartment complex (to be called "The Maples Apartments"), together with the development of .87 acres of land for commercial use.

3

It is undisputed that Acierno's interest in owning the property was partly by reason of its DPUD zoning classification and the fact that the property was the subject of an approved record development plan. Before closing on the property, Acierno sought and received assurances from the New Castle County Department of Planning ("Department of Planning") regarding the current zoning and record plan status of the property. In response to Acierno's request, the Department of Planning issued a letter opinion which stated the following: "The land is still currently zoned Diversified Planned Unit Development (DPUD). The status of the record plan is that it is current and, therefore, the uses permitted are noted on the plan subject to limitations regarding the density, commercial area, etc." Appendix ("App.") (No. 93-7456) at 131. In reliance on these factors, Acierno paid a premium of approximately $900,000 for the property. At the time of purchase, the description of the property specifically noted that the parcel had been approved by County officials for the construction of 322 apartment units.

In October, 1985, Acierno filed with the Department of Planning a revised development plan for the property, which was now to be known as the "Westhampton project." Thereafter, in December, 1985, the County Council issued a resolution pursuant to section 23-81(21) of the County Code[0] requesting that the

_____

[0]Then County Code § 23-81(21) provided in relevant part as follows:

> If construction has not been completed within . . . five (5) years after the date of approval of the record development plan for the [planned unit development ("PUD")] or the date

4

Department of Planning provide a recommendation as to whether the existing record plan for the property should be voided. The County Council issued this resolution based on concerns that DPUD rezonings were not being developed in a timely fashion, that the density of housing might adversely impact on the general quality of life in the County, that an updated review of traffic, water, and sewer facilities was necessary, and that the Subdivision Advisory Committee should review the project in light of the character of the existing neighborhood. The record reflects that the project was the only DPUD-zoned property with a record development plan subject to review by the County.

In response to the resolution, the Department of Planning solicited comments from various municipal departments and determined that the property had adequate traffic, water, and sewer capacity. Therefore, the Department of Planning did not make a recommendation that the County Council void the record development plan. Two months later, the then Council Attorney sent a memorandum to the County Council pertaining to the resolution. The memo stated that there was nothing more for the County Council to consider since the voiding provision of the New Castle County Code, § 23-81(21), "indicates that the [Department of Planning] must affirmatively support the voiding of a record

---

of approval of the record development plan of the last stage of PUD, if submitted in stages, whichever is longer, then the approval shall be voidable at the discretion of county council, upon recommendation of the department of planning.

New Castle County, Del., Code § 23-81(21) (repealed 1987); App. (No. 93-7456) at 355.

5

plan before Council's discretion comes into being.  Without such prerequisite support, Council has no discretion to act.  If this were not the case, review by the [Department of Planning] would be meaningless."  App. (No. 93-7456) at 140.

On March 11, 1986, then County Council President Karen Peterson informed Acierno that nothing remained for the County Council to consider regarding the resolution and that no further ordinances or resolutions had been proposed concerning the property.  Acierno then undertook a revision of the subdivision plan[0] for the property to address concerns raised by the County regarding the planned use for the site.  The Department of Planning informed Acierno that his revised and updated subdivision plan for the Westhampton project was approved and recorded on April 18, 1986.  A subsequent revised subdivision plan, superseding the April plan, was approved and recorded on December 5, 1986.

During 1987 the County Council revised, updated, and amended the DPUD zoning classification.  At the time a workshop concerning the zoning amendment effort was held in October, 1987, the proposed amended DPUD ordinance contained a "savings clause" which provided as follows:

> Section 4.  This ordinance shall become effective immediately upon its adoption and approval except for rezoning applications currently pending DPUD approval which shall be exempt from the provisions of this ordinance, but subject to the provisions of the Code in effect at the time of rezoning to DPUD.

---

[0]The County Code distinguishes between a "record plan" and major and minor "subdivision plans."  See New Castle County, Del., Code § 20-3 (defining these terms).

6

App. (No. 93-7456) at 92.  This proposed DPUD ordinance, known as "Substitute Ordinance No. 1 to Ordinance 87-025," was not enacted into law.  In response to suggestions made during the workshop, the savings clause was revised to read as follows:

> Section 4.  This ordinance shall become effective immediately upon its adoption and approval except for rezoning applications currently pending DPUD approval which shall be exempt from the provisions of this ordinance except Section 23-81(18), but subject to the provisions in the Code in effect at the time of rezoning to DPUD.

App. (No. 93-7456) at 113 (emphasis added).[0]  This revised DPUD ordinance, known as "Substitute Ordinance No. 2 to Ordinance 87-025," was adopted into law by the County Council on October 13, 1987.  Id. at 93, 113.  The language of the savings clause is relevant to this dispute because Acierno alleges that the County Council, through an opinion issued by First Assistant County Attorney Michael T. Mitchell, relied upon the unenacted version to conclude that it had discretion to void Acierno's record development plan.

In 1988, Acierno further revised the Westhampton project subdivision plan and submitted it for County review.  In June, 1988, the Department of Planning informed Acierno that the

---

[0]Current County Code § 23-81(18) allows a landowner with DPUD-zoned property 10 years from the date of the original rezoning ordinance to develop the parcel as proposed.  If the property has not been fully developed at the end of the 10 year sunsetting period, the landowner must submit current support facilities information establishing the adequacy of these facilities in the opinion of the Department of Planning in order to continue with the development as approved.  New Castle County, Del., Code § 23-81(18).  This provision replaced former County Code § 23-81(21), which provided a five year window after the date of the approval of the PUD record development plan before the County Council had discretion to void the record plan.  Id. § 23-81(21) (repealed 1987); see supra note 1.

7

subdivision plan, superseding the December 5, 1986 subdivision plan, was approved and recorded. By December, 1988 when a further revised subdivision plan was approved and recorded, Acierno had spent in excess of $1,000,000 to further his development plans for the property, including expenses for mortgage interest, engineering fees, and real estate taxes. It is not disputed, however, that Acierno never obtained a building permit from the County allowing him to start construction of the Westhampton project.

The County Council again introduced a resolution in April, 1991 requesting the Department of Planning's recommendation whether to void the existing record development plan for the property. The record reflects that the County Council had concerns similar to those present when a voiding resolution had been introduced in December, 1985. Acting upon this resolution and enclosing a copy of the December, 1988 subdivision plan, the then Director of the Department of Planning contacted the Delaware Department of Transportation for comments concerning road access and traffic impact.

In a memorandum to the County Council dated May 22, 1991, the then Director advised the County Council that Subdivision Advisory Committee members had been asked to comment on the Westhampton project and to identify any issues that might preclude development of the site as depicted by the record development and subdivision plans. The memo stated that various government agencies had identified deficiencies in the subdivision plan, but acknowledged that the situation could be

remedied by Acierno through voluntary revisions to the plan. In fact, Acierno responded to the Department of Planning by letter dated May 29, 1991 that he intended to cooperate in order to address and resolve any deficiencies. By June, 1991, Acierno had submitted a wetlands delineation report, thereby fulfilling one of the cited deficiencies.

Defendant-appellant Michael T. Mitchell, First Assistant County Attorney, was also involved in reviewing the voiding resolution proposed in April, 1991. He provided a legal memorandum to the County Council on July 2, 1991 which set forth his opinion as to whether the Council had authority to void Acierno's approved record development plan. Mitchell's opinion concluded that the County Council had discretion to void the record development plan for the Westhampton project upon recommendation by the Department of Planning because the old five-year sunsetting provision of the County Code, repealed § 23-81(21), applied rather than the newly enacted ten-year sunsetting provision, § 23-81(18). In coming to this conclusion, Mitchell relied upon the unenacted savings clause contained in Substitute Ordinance No. 1 to Ordinance 87-025, rather than the enacted savings clause which was introduced as part of Substitute No. 2 to that ordinance.

From May, 1991 through April, 1992 Acierno proceeded with his development efforts by attempting to remedy the purported deficiencies in the Westhampton plan. Some changes in the proposed development were incorporated into a revised plan which was submitted to the Department of Planning for review and

9

approval.  The Department of Planning allegedly informed Acierno in September, 1991 that he had complied with all material deficiencies contained in the May 22, 1991 memorandum from the Department of Planning to the County Council.  The County Council tabled the resolution to void Acierno's record development plan in September, 1991.

The resolution was reexamined the next Spring.  In a letter to the County Council dated April 2, 1992, the Department of Planning indicated that Acierno had submitted a new subdivision plan which resolved the wetlands, fire prevention, and a majority of the public works concerns.  The traffic and road access issues were the only remaining deficiencies that had not been completely resolved.  The Department of Planning concluded:

> In summary, it would appear that the only remaining issue with respect to our memorandum of May 22, 1991, is access through the Oakwood Hills subdivision.  The Department has been given no indication that the applicant will voluntarily remove this access from the plan.  Further, we see no evidence that any meaningful dialogue is ongoing between the applicant and community to find a compromise position. Should [the County] Council be of the opinion that this issue warrants voiding of the plan, the Department would recommend that it proceed with action on [the voiding resolution] as this appears to be the only method of bringing closure on this issue.

App. (No. 93-7456) at 39.

After notice and a public hearing, on April 14, 1992 the County Council enacted Ordinance 91-190 voiding the approved record development plan and related subdivision plans for the property.  The next day, defendant-appellant Philip Cloutier, then a member of the County Council, informed the Director of

10

Planning that he intended to introduce an ordinance to rezone the property from DPUD back to R-2, its residential zoning classification prior to its rezoning to DPUD in 1971. As required by statute, legal notice of the proposed zoning ordinance was published on June 20, 1992; below the title of the proposed ordinance contained in the notice was bracketed language indicating that enactment would rezone the property from DPUD to an R-2 zoning classification.

A statutorily required public hearing was held before the Department of Planning and Planning Board on July 7, 1992 concerning the proposed rezoning ordinance. Two weeks later, the Department of Planning recommended the adoption of a substitute ordinance which would rezone the property from DPUD to an R-1-B classification instead of an R-2 classification. The R-1-B zoning classification, which requires an average minimum lot size of 15,000 square feet, is less restrictive than the R-2 zoning classification, which requires an average minimum lot size of 21,780 square feet. Compare New Castle County, Del., Code § 23-39(3) (the R-1-B residence district requires a minimum lot area of 15,000 square feet) with id. § 23-39(6) (the R-2 residence district requires a one-half acre or 21,780 square feet minimum lot area).

On September 9, 1992 the County Council enacted Substitute No. 1 to Ordinance No. 92-119 rezoning the property from DPUD to an R-1-B zoning classification. This action was taken even though all public notices concerning the rezoning had indicated that upon enactment the property would be rezoned from

11

DPUD to an R-2 classification.  The effect of the rezoning was that Acierno had to suspend his plans to develop a large apartment building on the property because the R-1-B zoning classification permits only a variety of less intensive uses. The district court made a finding of fact that Acierno had spent more than $1,000,000 pursuing his plan to develop the property.[0]

## B. Procedural Background

Acierno filed a complaint on July 1, 1992 in the United States District Court for the District of Delaware alleging that the defendants, through the voiding of his approved record development plan and the rezoning of his property, violated his constitutional rights.  The original complaint named as defendants the County and present and former members of the County Council.[0]  The complaint was subsequently amended in April, 1993 to include First Assistant County Attorney Michael T. Mitchell as a party defendant.

The amended complaint contains two counts.  In count one, Acierno seeks compensatory damages and injunctive relief against all defendants pursuant to 42 U.S.C. § 1983.

[0]The district court did not clarify whether this figure of $1,000,000 includes the premium of $900,000 that it found Acierno paid for the property in reliance on the existing DPUD zoning classification and approved record development plan when he purchased the property in 1984.  In light of our disposition of these appeals, resolution of this factual ambiguity is not necessary and in no way impacts on our decision in this case.
[0]The defendants who are presently serving as members of the County Council are Richard Cecil, Robert Woods, Christopher Roberts, Penrose Hollins, and Karen Venezky.  The defendants who are former members of the County Council are Philip Cloutier and Robert Powell.

Specifically, Acierno alleges that the defendants violated his equal protection and procedural and substantive due process rights by down-zoning his property. In count two, Acierno seeks injunctive relief against the County under an equitable estoppel theory.

The present and former County Council members had filed an answer to the original complaint in which they allege defenses of legislative and qualified immunity. These defendants and the County filed a motion for summary judgment on December 4, 1992. After the filing of various motions and responses which are not relevant to this appeal, the district court made a determination to treat the motion by the defendants other than Mitchell as a motion for partial summary judgment. In a Memorandum Opinion and Order dated June 9, 1993, the district court granted the motion for summary judgment on Acierno's procedural due process claim,[0] but denied the motion as to the substantive due process and equal protection claims. See Acierno v. Cloutier, No. 92-385, 1993 WL 215133, at *23-26 (D. Del. June 9, 1993). The district court also concluded that the defendants were not entitled to summary judgment with respect to their defenses of legislative and qualified immunity. Id. at *27-30.

The district court separately addressed the defenses of legislative and qualified immunity. The district court

_____

[0]Acierno has not cross-appealed the granting of the defendants' motion for summary judgment with respect to the procedural due process claim, and thus, we have no occasion to address this theory of the complaint in this opinion or to consider whether we would have had jurisdiction over a cross-appeal.

13

articulated a two-part test for entitlement to legislative immunity which requires that the action taken be legislative in nature rather than administrative, and that the action be taken in accordance with statutory procedures. Id. at *27. The court concluded that the enactment of the two ordinances which down-zoned Acierno's property was administrative, rather than legislative, because the two ordinances were directed at a single property owner and not the community at large. Id. The court further held that the members of the County Council were not entitled to legislative immunity because they did not strictly comply with Delaware law when rezoning the property from DPUD to an R-1-B zoning classification. Id. at *27-29.

Turning to the defense of qualified immunity, the district court concluded that because Acierno had a vested right to develop his property pursuant to the DPUD zoning classification and approved record plan, see id. at *9-19, which was clearly established by Delaware state law at the time of the rezoning decisions, no reasonable official would have believed that the rezoning actions were lawful. Id. at *29. In rejecting the qualified immunity defense, the district court also found that a reasonable official would have known that the voiding of the record plan was precluded by County law. Id. Thus, the district court decided that the members of the County Council were not entitled to immunity from suit.

Defendant Mitchell filed a motion to dismiss the amended complaint on the grounds that it fails to state cognizable due process and equal protection claims against him

14

and that he is entitled to qualified immunity from suit. The district court rejected Mitchell's motion to dismiss in a separate Memorandum Opinion and Order dated September 1, 1993. Acierno v. Cloutier, No. 92-385, slip op. at 13-19 (D. Del. Sept. 1, 1993). Addressing the defense of qualified immunity, the district court denied Mitchell's motion because it found that Mitchell had knowingly, or through his own incompetence, relied on unadopted legislation when issuing his legal opinion as to whether the County Council had authority to void the approved record development plan. Id., slip op. at 19-20.

## II.

### A. Jurisdiction of the District Court

Plaintiff Acierno filed this action pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights by down-zoning his property. Thus, the district court had subject matter jurisdiction over the federal question claims by virtue of 28 U.S.C. §§ 1331 and 1343. It had supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367. In these appeals, the members of the County Council and defendant Mitchell contend that the district court improperly denied their motions to dismiss or for summary judgment on the grounds of immunity from suit.

### B. Appellate Jurisdiction

Ordinarily we do not have appellate jurisdiction to review district court orders denying motions to dismiss or for

summary judgment because there is no final order within the meaning of 28 U.S.C. § 1291. W.D.D., Inc. v. Thornbury Township, 850 F.2d 170, 171 (3d Cir.) (in banc) (per curiam), cert. denied, 488 U.S. 892, 109 S. Ct. 228 (1988). The Supreme Court, however, has held that courts of appeal have appellate jurisdiction under the "collateral order" doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S. Ct. 1221 (1949), to consider whether a defendant is entitled to absolute immunity from suit. Nixon v. Fitzgerald, 457 U.S. 731, 741-43, 102 S. Ct. 2690, 2697-98 (1982); see also Schrob v. Catterson, 967 F.2d 929, 934 (3d Cir. 1992) ("Schrob II"); Schrob v. Catterson, 948 F.2d 1402, 1406-07 (3d Cir. 1991) ("Schrob I"). This principle of appellate jurisdiction has been extended to orders rejecting a defendant's entitlement to qualified immunity from suit to the extent that the decision turns on issues of law. Mitchell v. Forsyth, 472 U.S. 511, 524-30, 105 S. Ct. 2806, 2814-17 (1985); see also Kulwicki v. Dawson, 969 F.2d 1454, 1459-61 (3d Cir. 1992).

In adhering to this theory of appellate jurisdiction, we have recognized that an order denying a defense of immunity is reviewable before trial because entitlement to "immunity from federal claims encompasses not only immunity from liability, but also immunity from suit." Brown v. Grabowski, 922 F.2d 1097, 1105 (3d Cir. 1990), cert. denied, 501 U.S. 1218, 111 S. Ct. 2827 (1991). See also Federal Ins. Co. v. Richard I. Rubin & Co., 12 F.3d 1270, 1281 (3d Cir. 1993) (sovereign immunity is an immunity from trial), cert. denied, __ U.S. __, 114 S. Ct 2101 (1994). The Supreme Court has instructed that the first step in reviewing a

16

district court's qualified immunity decision is to determine whether the plaintiff has "allege[d] the violation of a clearly established constitutional right" at all.  Siegert v. Gilley, 500 U.S. 226, __, 111 S. Ct. 1789, 1793 (1991); see also D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1368 (3d Cir. 1992) (in banc), cert. denied, __ U.S. __, 113 S. Ct. 1045 (1993).  This threshold inquiry requires us to determine whether the constitutional right asserted by Acierno was "'clearly established' at the time the defendants acted," and whether Acierno "has asserted a violation of a constitutional right at all."  Siegert, 500 U.S. at __, 111 S. Ct. at 1793.[0]

---

[0]The Supreme Court's majority opinion in Siegert, when read as a whole, seems to suggest that where practicable or expedient an appellate court should first address whether the plaintiff has alleged a cognizable constitutional claim at all, before turning to the question of whether the constitutional right asserted was "clearly established" at the time the defendant acted.  500 U.S. at __, 111 S. Ct. at 1793–94.  In fact, we have emphasized this aspect of the Siegert decision in a subsequent case where we decided to address all plaintiffs' allegations of constitutional error as a predicate question to whether the constitutional rights were "clearly established" at the time the defendant acted.  See D.R. by L.R., 972 F.2d at 1368.  Nevertheless, concurring in the judgment in Siegert, Justice Kennedy recognized that in certain cases, like the one before the Supreme Court in that case, it is an "altogether normal procedure" for the court of appeals to decide the case "on the ground that appear[s] to offer the most direct and appropriate resolution," 500 U.S. at __, 111 S. Ct. at 1795 (Kennedy, J, concurring in the judgment), which in difficult constitutional cases will sometimes be whether the constitutional right was "clearly established" at the time the defendant acted.  Furthermore, the majority opinion in Siegert does not state that courts of appeals must always as an initial inquiry address whether a constitutional violation has been alleged by the plaintiff.  In fact, in cases decided after both Siegert and D.R. by L.R., we have opted to address whether the constitutional right asserted was "clearly established" at the time the defendant acted, without initially deciding whether a constitutional violation was alleged at all.  See Rappa v. New

17

The present case involves two appeals: (1) the defendants who are current and former members of the County Council have appealed the district court's order denying their motion for summary judgment insofar as the court rejected their defenses of legislative and qualified immunity from suit; and (2) defendant Mitchell has appealed the district court order denying his motion to dismiss insofar as the court rejected his defense of qualified immunity from suit. Although all parties agree that we have jurisdiction under the collateral order doctrine to consider the issues of legislative and qualified immunity to some extent, they disagree on the scope of our appellate jurisdiction.

The Nixon case makes clear that we have appellate jurisdiction to consider whether the former members of the County Council are entitled to absolute legislative immunity. 457 U.S. at 741-43, 102 S. Ct. at 2697-98; see also Schrob I, 948 F.2d at 1406-07; Venen v. Sweet, 758 F.2d 117, 121-22 (3d Cir. 1985); Forsyth v. Kleindienst, 599 F.2d 1203, 1207-09 (3d Cir. 1979), cert. denied, 453 U.S. 913, 101 S. Ct. 3147 (1981). The scope of

Castle County, 18 F.3d 1043, 1077-79 (3d Cir. 1994); Abdul-Akbar v. Watson, 4 F.3d 195, 201-05 (3d Cir. 1993).

In cases such as the present one, where the court would be required to undertake a detailed analysis of unreported and undeveloped state and county law issues in order to determine whether a cognizable constitutional claim was alleged at all, we believe a more prudent course is to first address whether the constitutional right asserted by the plaintiff was "clearly established" at the time the defendant acted. We will follow such a course in this case because, as will be explained infra, the state and county law issues which we would need to decide in order to determine whether Acierno possessed a vested right to develop his commercial property before the rezoning ordinances were passed are particularly difficult and undeveloped.

18

our jurisdiction to consider the issues of qualified immunity, and legislative immunity as concerns the present members of the County Council, is a more complex question, however, especially in light of the fact that Acierno seeks prospective injunctive relief against several of the defendants. When deciding the appealability of qualified immunity issues in <u>Mitchell</u>, a case in which only monetary damages were sought, the Supreme Court expressly left open the question whether a case involving claims for injunctive relief would change the equation. 472 U.S. at 519 n.5, 105 S. Ct. at 2812 n.5. We subsequently addressed that question and held that the denial of a defendant's claim to entitlement to qualified immunity is not immediately appealable when the plaintiff has requested injunctive relief. <u>Prisco v. United States Dep't of Justice</u>, 851 F.2d 93, 95-96 (3d Cir. 1988), <u>cert. denied</u>, 490 U.S. 1089, 109 S. Ct. 2428 (1989).

As a result, plaintiff Acierno submits that we must dismiss these appeals insofar as they involve present County Council members Cecil, Woods, Roberts, Hollins, and Venezky, and First Assistant County Attorney Mitchell, because he seeks prospective injunctive relief against these parties.[0] With

---

[0]Acierno also contends that the district court's denial of the motion for summary judgment on legislative immunity grounds as concerns the present members of the County Council falls into the ambit of the <u>Prisco</u> rule and is not immediately appealable. We agree. Although the <u>Prisco</u> case did not explicitly involve an issue of absolute immunity, its holding extends to legislative as well as qualified immunity. 851 F.2d at 96 ("We hold, therefore, that in an action in which claims for prospective relief remain pending, a party against whom they remain pending may not appeal from the denial of a motion for summary judgment on immunity grounds.").

19

respect to former County Council members Cloutier and Powell, against whom it is impossible to obtain prospective injunctive relief, Acierno concedes that the order denying their motion for summary judgment on legislative and qualified immunity grounds is immediately appealable.

The defendants argue that Prisco was wrongly decided in light of the prevailing rule among our sister courts of appeal that despite the existence of a request for injunctive relief pre-trial orders denying a defendant's entitlement to qualified immunity are immediately appealable. See Burns v. County of Cambria, Pa., 971 F.2d 1015, 1019-20 (3d Cir. 1992) (canvassing cases from the nine circuits which disagree with Prisco), cert. denied, __ U.S. __, 113 S. Ct. 1049 (1993). We, of course, have no occasion in this case to reconsider Prisco and are bound to follow our precedent. See Internal Operating Procedures, United States Court of Appeals for the Third Circuit, Rule 9.1 (prior reported opinions can be overruled only by the court sitting in banc). Thus, we will adhere to the Prisco rule and dismiss these appeals insofar as they involve issues of whether the present County Council members are entitled to absolute and qualified immunity.

In addition to arguing that Prisco was wrongly decided, Mitchell also seeks to distinguish Prisco by arguing that Acierno has made no viable claim for injunctive relief against him. He contends that his only action with respect to this entire dispute was the issuance of a legal opinion to the County Council which indicated that the Council had discretion to void the property's

20

record plan.  In support of his argument that the amended complaint contains no viable injunctive relief against him, Mitchell cites only to Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797 (3d Cir. 1989).  That case provides no support for his position because it merely reviewed the standards employed by a district court in granting preliminary injunctive relief and concluded that the court abused its discretion in finding that the plaintiff had met its burden of demonstrating irreparable harm.  Id. at 800–05.  Nevertheless, Prisco allows us to "examine[] the complaint carefully to determine whether any of its allegations would permit proof of facts warranting any prospective relief against him."  851 F.2d at 96.

We must accept the factual allegations contained in the amended complaint as true and draw all factual inferences in favor of plaintiff Acierno as the non–moving party because this appeal arrives in our court after the denial of motion to dismiss.  Kulwicki, 969 F.2d at 1462.  In his amended complaint Acierno makes several allegations concerning Mitchell's role in the voiding of the record plan, as well as allegations that all defendants, including Mitchell, have acted arbitrarily and abusively to deprive Acierno of his right to develop commercial property.  The amended complaint contains a general request seeking preliminary and permanent injunctive relief for reinstatement of the record plan and DPUD zoning, a declaration that Acierno has a vested right to develop the property as zoned, and a prohibition on further violations of Acierno's

21

constitutional rights.  App. (No. 93-7456) at 26.  Nowhere in the complaint, however, does Acierno allege that it lies within the scope of Mitchell's job responsibilities to take action reinstating his record plan and DPUD zoning, or to declare that he possesses a vested development right.  Furthermore, the request for an injunction prohibiting further violations of Acierno's constitutional rights is overbroad given the nature of Mitchell's limited role in this dispute.  Therefore, we hold that there is no viable injunctive relief available against Mitchell as pleaded in the amended complaint, which distinguishes his appeal from the rule of <u>Prisco</u>.  We have appellate jurisdiction to consider whether Mitchell was entitled to dismissal as a defendant on qualified immunity grounds.

In sum, we will dismiss the appeal of the members of the County Council insofar as it involves questions of legislative and qualified immunity with respect to present members against whom injunctive relief is sought.  We have limited appellate jurisdiction to consider whether the former members of the County Council are entitled to absolute legislative and qualified immunity from suit.  We also have appellate jurisdiction to consider whether the district court erred in denying First Assistant County Attorney Mitchell's motion to dismiss on qualified immunity grounds.[0]  Furthermore,

---

[0]With these appeals, the defendants argue that the district court erred as a matter of law in failing to grant their motion for summary judgment as to Acierno's claim alleging a violation of the Equal Protection Clause of the Fourteenth Amendment.  It is not clear from the district court's opinion that the defendants argued that they are entitled to absolute legislative immunity or

22

in our consideration of the qualified immunity issue as it relates to the substantive due process claim, we will first determine whether plaintiff Acierno has asserted a violation of a clearly established constitutional right at all.

## III.

In this case we must decide whether the district court correctly denied the former members of the County Council's motion for summary judgment on legislative and qualified immunity grounds, and First Assistant County Attorney Mitchell's motion to dismiss on qualified immunity grounds. Because "[t]his appeal presents a purely legal question concerning the scope of the immunity doctrine," we exercise plenary review over the district court's denial of the summary judgment motion on legislative immunity grounds. Donivan v. Dallastown Borough, 835 F.2d 486, 487 (3d Cir. 1987), cert. denied, 485 U.S. 1035, 108 S. Ct. 1596 (1988).

We also exercise plenary review over the denial of the summary judgment motion and motion to dismiss on qualified immunity grounds because this issue presents a "purely legal" question. Burns, 971 F.2d at 1020; Lee v. Mihalich, 847 F.2d 66,

qualified immunity with respect to this allegation. Furthermore, in their brief submitted to this court the defendants did not argue that their immunity defenses also relieve them of liability on the equal protection claim. Accordingly, because our jurisdiction is limited to addressing the defenses of legislative and qualified immunity for the former members of the County Council and Mitchell, we do not express any opinion concerning whether Acierno possesses a viable claim for a violation of the Equal Protection Clause or whether there are immunity defenses for any of the defendants to such a claim.

67 (3d Cir. 1988).  To the extent that the district court interpreted state and county law in determining whether Acierno had a vested right to develop the property, the district court is not entitled to any deference.  Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S. Ct. 1217, 1221 (1991); cf. Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1557 (3d Cir. 1994).  The determinations regarding state and county law necessary to decide whether the defendants are entitled to qualified immunity will be reviewed de novo.  Salve Regina College, 499 U.S. at 231, 111 S. Ct. at 1221.

IV.

A.

We first address the issue of whether the former members of the County Council are entitled to absolute legislative immunity for their actions because in the event we agree with their position, that would obviate the need for evaluating their claim to entitlement to qualified immunity. The Supreme Court has held that individual members of state legislatures are absolutely immune from suit for damages under 42 U.S.C. § 1983 when conducting legitimate legislative activity. Tenney v. Brandhove, 341 U.S. 367, 376-79, 71 S. Ct. 783, 788-89 (1951). After the Supreme Court extended this protection of absolute immunity to regional legislators functioning in a capacity comparable to that of members of a state legislature, Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 402-06, 99 S. Ct. 1171, 1178-79 (1979), we further extended it to protect members of local legislative bodies for actions taken in a purely legislative capacity. Aitchison v. Raffiani, 708 F.2d 96, 98-99 (3d Cir. 1983); see also Ryan v. Burlington County, N.J., 889 F.2d 1286, 1290 (3d Cir. 1989).[0]

---

[0]In Bass v. Attardi, 868 F.2d 45, 49-50 (3d Cir. 1989), we held that members of a municipal planning board, acting pursuant to their governmental function as defined by state statute when making land use decisions, were absolutely immune in their individual capacities from a damage suit brought under 42 U.S.C. § 1983. Acierno does not allege that the members of the County Council were acting in a non-governmental function, e.g., outside of powers delegated to them by state law, when they enacted the two ordinances which down-zoned his property. Therefore, for purposes of deciding this case, we will assume without deciding

25

The County Council, whose members are elected, is a local governmental body that has been given a combination of legislative and administrative powers.  See Del. Code Ann. tit. 9, §§ 1146, 4901 (1989).  "It is only with respect to the legislative powers delegated to them by the state legislatures that the members of local governing boards are entitled to absolute immunity."  Ryan, 889 F.2d at 1290.  Thus, our task in making this immunity determination requires us to examine whether the members of the County Council were acting in an administrative or legislative capacity when they enacted the ordinances down-zoning Acierno's property.  Abraham v. Pekarski, 728 F.2d 167, 174 (3d Cir.), cert. denied, 467 U.S. 1242, 104 S. Ct. 3513 (1984).

We have established a two-part test to determine whether actions are to be regarded as legislative for immunity purposes: (1) the action must be "substantively" legislative, which requires that it involve a policy-making or line-drawing decision; and (2) the action must be "procedurally" legislative, which requires that it be undertaken through established legislative procedures.  Ryan, 889 F.2d at 1290-91.  Providing a further inquiry to help define the first part of the Ryan test, in that case we stated that decisions affecting a single individual or a small number of people do not implicate legislative power, and thus, such actions are administrative in

that the members of the County Council were acting within their statutorily defined governmental function when the two ordinances were enacted.

26

nature.  Id. at 1291.  Furthermore, in prior cases we have indicated that such an inquiry is an appropriate factor to consider when determining whether an action is legislative or administrative, see Donivan, 835 F.2d at 488; Rogin v. Bensalem Township, 616 F.2d 680, 693-94 (3d Cir. 1980), cert. denied, 450 U.S. 1029, 101 S. Ct. 1737 (1981), but we have not held that this inquiry is conclusive.

When the district court conducted its analysis under the first part of the Ryan test, it focused only on the factor of whether the action was directed toward a single individual or the community at large.  The district court stated, "legislative acts are those which apply generally to the entire community, whereas acts specifically directed at one or a few individuals are executive or administrative acts."  Acierno v. Cloutier, No. 92-385, 1993 WL 215133, at *27 (D. Del. June 9, 1993).[0]  On the basis of the fact that passage of the two ordinances did not rezone any other landowner's property, the district court held that the County Council's actions with respect to Acierno's property were administrative in nature.  Id.

We believe the district court erred in its application of the "substantive prong" of the Ryan test by placing too much emphasis on the factor of whether the action was directed at a

---

[0]The district court cited the following cases for this proposition: Donivan, 835 F.2d at 488; Rogin, 616 F.2d at 693; Ryan v. Burlington County, N.J., 708 F. Supp. 623, 640 (D.N.J.), aff'd, 889 F.2d 1286 (3d Cir. 1989); and de Botton v. Marple Township, 689 F. Supp. 477, 482-83 (E.D. Pa. 1988).  As we already stated, in Donivan and Rogin we did rely in part on this factor, but we did not hold that this inquiry is dispositive of the administrative/legislative determination.

single individual or the community at large.  It is difficult to find fault with the district court, however, because we concede that the prior decisions of this court are somewhat unclear as to what are the relevant factors, and how much weight each should be given, in deciding whether zoning and other land use actions are substantively legislative or administrative in nature. Furthermore, there is a consistent thread running through the case law which indicates that courts often point to the narrow target of an action as indicative of an administrative, rather than legislative, act.  See, e.g., Cutting v. Muzzey, 724 F.2d 259, 261 (1st Cir. 1984) (planning board's decision "to insist on completion of a particular road before granting approval of a specific proposed subdivision" was an action based on specific, rather than legislative, facts tending to single out specific individuals and affect them differently than others; thus, the action was administrative rather than legislative in nature); Scott v. Greenville County, 716 F.2d 1409, 1422–23 (4th Cir. 1983) (county council members who reviewed a specific building permit application assumed a non-legislative role); Jodeco, Inc. v. Hann, 674 F. Supp. 488, 495 (D.N.J. 1987) ("Official acts affecting the community at-large might tip the balance in favor of a finding of legislative conduct, while acts directed at one or a few individuals might be dispositive of executive or administrative conduct.").

In Jodeco, the district court commented that there was no definitive standard in this circuit for distinguishing between legislative and non-legislative actions.  674 F. Supp. at 494–95.

28

Although in Ryan we clarified the test somewhat by indicating that actions must be both substantively and procedurally legislative in nature in order to be entitled to absolute immunity, we believe that the "substantive prong" of the standard requires further elaboration. To fill the gap which has been left open in our prior cases dealing with legislative immunity, we repeat the standard employed by the district court in Jodeco:

> [In order to distinguish] legislative from non-legislative functions, . . . the appropriate inquiry [is] whether the conduct of the defendant zoning officials involved either the enactment or amendment of zoning legislation or simply the enforcement of already existing zoning laws. Acts performed pursuant to the former are legislative in character and the officials performing them are entitled to absolute immunity, while acts performed pursuant to the latter are administrative, executive, or ministerial and the officials performing them may only receive the protection of qualified immunity. Factored into this equation should be the impact that such official conduct has on the citizens of the municipality. Official acts affecting the community at-large might tip the balance in favor of a finding of legislative conduct, while acts directed at one or a few individuals might be dispositive of executive or administrative conduct.

674 F. Supp. at 494-95. We have previously cited with approval the court's analysis in Jodeco concluding that members of planning boards in New Jersey are entitled to absolute immunity because their responsibilities "are so integrally related to the judicial process," id. at 496. See Bass v. Attardi, 868 F.2d 45, 50 (3d Cir. 1989). Likewise, we now adopt the court's analysis of the legislative/administrative determination as our own.

In the present case, the members of the County Council acted to down-zone Acierno's property through two separate, albeit related, actions. The first action was the enactment of

29

an ordinance on April 14, 1992 voiding the approved record development plan and related subdivision plans for the property. The second action was the enactment of an ordinance on September 9, 1992 rezoning the property from DPUD to an R-1-B zoning classification. Accordingly, we must consider each of these actions under the standard articulated above.

The enactment of the ordinance voiding the approved record development plan was undertaken by the County Council pursuant to the authority of the sunsetting provision of the County Code, § 23-81(18), which allows the Council to revoke development rights after the passage of ten years to ensure that facilities and infrastructure are sufficient. This ordinance was passed in an effort to facilitate enforcement of existing zoning laws, not to facilitate enactment or amendment of new zoning laws involving broad-based policy or line-drawing determinations. Furthermore, the ordinance affected only one piece of property, and thus was aimed at only one landowner, Frank Acierno. We thus conclude that the County Council's enactment of Ordinance 91-190 on April 14, 1992, which voided the approved record development plan and related subdivision plans for the property, was an administrative, not legislative, action. The members of the County Council are not entitled to legislative immunity with respect to this action.[0]

------

[0]The parties disagree as to whether the entire rezoning process, which involved the enactment of the two ordinances, was accomplished consistently with all the procedures required by state law. In light of our conclusion that the enactment of Ordinance 91-190 was not substantively legislative in character,

30

We now turn to the County Council's second action, the enactment of Substitute 1 to Ordinance 92-119 which rezoned the property from DPUD to an R-1-B zoning classification. This action of rezoning the property was undertaken pursuant to the legislative powers delegated to the County Council under Delaware state law. See Del. Code Ann. tit. 9, §§ 2601-2614 (1989 & Supp. 1992). Furthermore, the rezoning of the property was accomplished through the ordinance procedure, which we have found necessary in order for the action to be substantively legislative in character. Donivan, 835 F.2d at 488-89. If not for the fact that the ordinance was aimed at one parcel of property and one landowner, the action would appear to be substantively legislative, not administrative, in nature.

Nevertheless, this case requires us to address the difficult question of whether a rezoning action that is otherwise substantively legislative in character is removed from the scope of actions protected by the absolute immunity doctrine merely because it was directed at one parcel of property. In Ryan, we did state that "[w]here the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration." 889 F.2d at 1291. However, we did not intend this consideration as a bright-line rule which automatically overrides other important indications that an action is substantively legislative in character. Rather, we intended this consideration as a factor

we need not address whether this action also violated the "procedural prong" of the Ryan test.

31

that is usually important but may not be dispositive of the administrative/legislative outcome.  This reading of Ryan is confirmed by the manner in which the Ryan court applied its test.  While noting that the decision at issue "did not affect the community as a whole," the court went on to state that "[t]his is a strong indication that legislative line-drawing was not implicated."  Id.  Therefore, the Ryan court itself did not apply the factor that the decision was directed at a single individual or a small group as a dispositive consideration which trumps other relevant factors.

Although we have indicated that the factor of an action being directed at one property or one landowner is an important consideration, other courts have concluded that the rezoning of a single parcel of land to a less intensive use through the enactment of an ordinance is legislative activity.  See Fralin & Waldron, Inc. v. County of Henrico, Va., 474 F. Supp. 1315, 1320-21 (E.D. Va. 1979) (members of planning board were engaged in legislation when acting to rezone a single parcel of property); Shellburne, Inc. v. New Castle County, 293 F. Supp. 237, 244 (D. Del. 1968) ("the members of the County Council were acting within the scope of legitimate legislative activity when they voted to rezone plaintiff's property").  Delaware state law is to the same effect.  See Shellburne, Inc. v. Buck, 240 A.2d 757, 758 (Del. 1968).  Furthermore, the cases in which the factor of the zoning ordinance being directed at only a single or few property owners has been dispositive of the administrative/legislative determination generally have been variance or special exception

32

decisions, not rezoning decisions. See, e.g., Rogin, 616 F.2d at 693 n.60 (denial of use variance); Cutting, 724 F.2d at 261 (subdivision approval); Scott, 716 F.2d at 1422-23 (denial of building permit); Jodeco, 674 F. Supp. at 496 (denial of variance applications).

Finally, we also believe that the members of a county legislature who enact a rezoning ordinance affecting only one property or landowner may still be acting in a policy-making or line-drawing manner. In the present case, the subject property consisted of thirty-eight acres of unimproved land with an approved development plan calling for 322 apartment units and some commercial use. Through the normal review process, specific concerns arose such as whether the development plan complied with wetlands regulations, the fire prevention code, and public works regulations, and that the project as planned may pose serious traffic and road access problems. In response to these concerns and, ultimately, Acierno's failure to address all of them adequately in a timely fashion, the County Council acted to regulate the intensity of development on this fairly large parcel of land by passing the rezoning ordinance.

Under these circumstances, a blind adherence to the principle that legislation affecting a single property or owner is administrative rather than legislative would eviscerate the overarching aim of protecting local legislators from suit under the absolute immunity doctrine when they make broad policy decisions to further the communities in which they serve. Therefore, we hold that the members of the County Council in

33

enacting Substitute 1 to Ordinance 92-119, which rezoned the property from DPUD to an R-1-B zoning classification, were acting in a substantively legislative manner.  Nevertheless, as we made clear in Ryan, the members of the County Council are not entitled to absolute legislative immunity for this action unless it was also procedurally legislative.  889 F.2d at 1290-91.

The enactment of Substitute 1 to Ordinance 92-119 was procedurally legislative if it was undertaken through established legislative procedures.  Id.  That is, the members of the County Council are entitled to absolute immunity for this action if they followed "the statutory procedures specified for such action." Abraham, 728 F.2d at 174.  Addressing the "procedural prong" of the Ryan test, the district court held that the members of the County Council failed to comply with specified statutory procedures in rezoning the property from DPUD to an R-1-B zoning classification.  Acierno v. Cloutier, No. 92-385, 1993 WL 215133, at *27 (D. Del. June 9, 1993).  Specifically, the district court found that the County Council violated title 9, section 1152(b) of the Delaware Code by enacting an ordinance which had been "amended as to [a] matter of substance which [was] not embraced within the title of the ordinance" without subjecting the ordinance "to all of the procedures . . . required in the case of a newly introduced ordinance."  Id. at *28 (quoting Del. Code Ann. tit. 9, § 1152(b)).

Acierno took issue with the procedure employed to rezone his property because the County Council ultimately adopted an ordinance rezoning the property to an R-1-B classification,

34

while bracketed language below the title of the originally proposed ordinance, for which the County Council had complied with all requisite procedures, stated that the ordinance would rezone the property to an R-2 classification. In the district court, the members of the County Council argued that this change did not affect the title of the ordinance and, in any event, was not a material amendment because the R-1-B zoning classification is less restrictive than the R-2 zoning classification. The district court rejected these arguments because the very purpose of the ordinance was to change the zoning classification, and because the actual language which was changed was part of the title of the ordinance and was not for informational purposes only.

On appeal, the members of the County Council argue that the district court's "technical objection" to the allegedly deficient notice does not prevent members of municipal legislative bodies from establishing legislative immunity. We reject the notion that our decision in Abraham stands for the broad proposition that a mere technical violation of the statutory procedures specified for legislative action, by itself, converts an otherwise legislative action into an administrative action. Rather, in Abraham, we looked to the failure to follow procedures established by state law, which were required to be followed in order to legislate, as indicative that a township board had invoked its managerial powers in dismissing an employee. 728 F.2d at 174-75. Thus, we viewed the compliance with statutory procedures as a prerequisite for finding an action

35

legislative in character, but we did not hold that a mere technical violation of a statutory procedure would have the effect of converting an otherwise legislative action into an administrative action to which absolute immunity does not apply.

Addressing the "procedural prong" of the immunity determination, in Ryan we stated that "[t]his principle requires that constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve." 889 F.2d at 1291. In the present case, it is undisputed that the members of the County Council followed all the statutory procedures required in order to enact an ordinance: (1) a legal notice of the proposed zoning ordinance was published; (2) a public hearing was held before the Department of Planning and Planning Board; and (3) the adopted ordinance, though amended during the Planning Board hearing, was enacted by vote at a public meeting of the County Council. Even though the version of the ordinance ultimately enacted, Substitute 1 to Ordinance 92-119, was not formally put through all the statutory procedures after the amendment was agreed upon at the public hearing held before the Department of Planning and Planning Board, we believe that the members of the County Council engaged in legislative activity and took the steps necessary to rezone the property in compliance with Delaware law.

We also believe there to be an important distinction between general adherence to legislative procedure for the

36

purposes of taking legislative action as a matter of federal law, as opposed to full compliance with all technical requirements for such legislative action to be valid under state or county law. It may well be that if in fact state law required the substitute to the originally proposed ordinance to also go through all the statutorily required notice procedures and hearings that Acierno would be able to successfully attack the validity of Substitute 1 to Ordinance 92-119 in an administrative or state court proceeding. But the fact that Acierno may have an alternative remedy based on an alleged failure of the legislative body to follow state-mandated procedures does not mean that, as a matter of federal law, the resulting action is transformed from one that is procedurally legislative into one that is not.

Therefore, we hold that in making the determination of whether a particular action was procedurally legislative or not, the court need only be satisfied that the municipal body is acting pursuant to the basic legislative procedure. In the present case, we find no indication in the record that the members of the County Council bypassed state-mandated procedures in bad faith when enacting Substitute 1 to Ordinance 92-119. Rather, the record reflects that the County Council followed the ordinance procedure, published notice of its intended action, and held the appropriate public hearings before enacting the rezoning ordinance. Consequently, we hold that the district court erred in holding that a possible violation of the publication notice

37

requirement destroyed the legislative character of the County Council's act of enacting Substitute 1 to Ordinance 92-119.[0]

In sum, we conclude that the former members of the County Council are entitled to absolute legislative immunity for rezoning Acierno's property through the enactment of Substitute 1 to Ordinance 92-119 because that action was substantively and procedurally legislative in character. Nevertheless, the former members of the County Council are not entitled to legislative immunity for the enactment of Ordinance 91-190, which voided the approved record development plan and related subdivision plans for the property, because that action was administrative in nature, not legislative. We will reverse in part, and affirm in part, that part of the district court's order denying the defendants' motion for summary judgment on legislative immunity grounds. Therefore, we must address whether the former members of the County Council are entitled to protection under the more

---

[0]The members of the County Council also argue that their action of rezoning the property did not violate the "procedural prong" of the Ryan test (1) because that portion of the ordinance which indicated the precise zone the property would be changed to was not part of the title of the ordinance, and thus was not a material alteration; (2) because Acierno does not have standing to complain since he attended and participated in the public hearings; (3) because he was not prejudiced since the R-1-B zoning classification allows for more intensive development than the R-2 zoning classification; and (4) because the remedy that the district court's ruling would require--a return to the Planning Board for review and subsequent republication--would be unnecessarily duplicative since it made the recommendation that the proposed ordinance be amended in the first place. In light of our conclusion that the enactment of Substitute 1 to Ordinance 92-119 was procedurally legislative, we need not address these contentions.

38

limited doctrine of qualified immunity for their action voiding the approved record development plan for the property.

B.

Addressing the defendants' claim of entitlement to qualified immunity from suit requires us to determine whether Acierno possessed a "clearly established" constitutional right to develop his property which was abrogated by the County Council through the action of voiding his record development plan and subdivision plan. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1981). In his amended complaint, Acierno alleges that he had a vested right to develop the property pursuant to the DPUD zoning classification and the approved record development plan. The district court agreed with Acierno and found that his vested right to develop the property arose from independent Delaware state and County law sources. Our review of County law and Delaware state law reveals that if Acierno did possess a vested right to develop his property as zoned, that right was not so "clearly established" as to strip the former members of the County Council and First Assistant County Attorney Mitchell from an entitlement to qualified immunity. Thus, we will reverse the district court's denial of the defendants' motion for summary judgment on qualified immunity grounds for the former members of the County Council, and its denial of Mitchell's motion to dismiss on qualified immunity grounds.

When considering whether members of local legislative bodies are entitled to immunity from suit, we have recognized that there is a compelling need for such a protective doctrine because of the severe chilling effect numerous suits for damages would have on prospective officials. See Jodeco, Inc. v. Hann, 674 F. Supp. 488, 493 (D.N.J. 1987) (cited with approval in Bass v. Attardi, 868 F.2d 45, 49-50 (3d Cir. 1989)). We also believe that adherence to the immunity doctrine is necessary in order to allow elected and appointed officials to make intelligent land use decisions without the constant fear of litigation infecting the decision-making process. Bass, 868 F.2d at 50 n.11 (quoting Anastasio v. Planning Bd., 209 N.J. Super. 499, 526, 507 A.2d 1194, 1208, certification denied, 107 N.J. 46, 526 A.2d 136 (1986)). Recognizing similar concerns, the Supreme Court has indicated that the qualified immunity defense has evolved to provide "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986); see also Schrob I, 948 F.2d 1402, 1421 (3d Cir. 1991).

In Harlow v. Fitzgerald, the Supreme Court announced that the test for determining whether government officials are entitled to qualified immunity for their actions involves an objective, rather than subjective, inquiry. 457 U.S. at 815-18, 102 S. Ct. at 2736-38. The Supreme Court stated, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

40

constitutional rights of which a reasonable person would have known." Id. at 818, 102 S. Ct. at 2738; see also Burns v. County of Cambria, Pa., 971 F.2d 1015, 1021 (3d Cir. 1992), cert. denied, __ U.S. __, 113 S. Ct. 1049 (1993).

Subsequently, the Supreme Court has clarified that the first inquiry in considering a claim to entitlement to qualified immunity is to examine whether the plaintiff has "allege[d] the violation of a clearly established constitutional right." Siegert v. Gilley, 500 U.S. 226, __, 111 S. Ct. 1789, 1793 (1991); see supra note 7. In a recent discussion of the "clearly established" right aspect of the qualified immunity determination, we stated:

> The right an official is alleged to have violated must have been "clearly established" in a "particularized" sense. Anderson v. Creighton, 483 U.S. [635,] 640, 107 S. Ct. [3034,] 3039 [(1987)]. That is, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. Thus, qualified immunity does not apply if "reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be unlawful." Good v. Dauphin County Social Servs. for Children and Youth, 891 F.2d 1087, 1092 (3d Cir. 1989).

Abdul-Akbar v. Watson, 4 F.3d 195, 202 (3d Cir. 1993).

When complaining of a violation of substantive due process rights, a plaintiff must prove that the governmental authority acted to "infringe[] a property interest encompassed by the Fourteenth Amendment." Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 679 (3d Cir. 1991), cert. denied, __ U.S. __, 112 S. Ct. 1668 (1992).

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions

are defined by existing rules or understandings that stem
from an independent source such as state law--rules or
understandings that secure certain benefits and that support
claims of entitlement to those benefits.

Board of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709
(1972).

Thus, as the district court in this case did, when
analyzing substantive due process claims courts are required to
turn to state and local law to determine whether the plaintiff
possessed a property interest which was abrogated by the
governmental action.  The question of whether the property
interest requirement has been met is generally a matter of law
for the court to decide.  RRI Realty Corp. v. Incorporated
Village of Southampton, 870 F.2d 911, 918 (2d Cir.), cert.
denied, 493 U.S. 893, 110 S. Ct. 240 (1989).

In denying the defendants their claim to entitlement to
qualified immunity, the district court first found that Acierno
had a protected property interest.  The court concluded that
Acierno had a protected property interest in both the approved
record development plan and the DPUD zoning classification, and
that this property interest was independently derived from both
New Castle County and Delaware state law sources.  Since the
district court addressed Acierno's property interest as arising
from these independent sources, we will follow suit in our
discussion.

The district court first determined that Acierno had a
vested right pursuant to County law.  For purposes of this
analysis, the court assumed that the County Council had relied

upon the repealed "five-year sunset provision" of the County Code, § 23-81(21) (repealed 1987), as the authority for its power to void the record development plan. Assuming that provision was properly applied, the district court concluded that it gave Acierno "a legitimate claim of entitlement to the continuing validity of the record plan and the zoning classification to which it related, and to develop the [p]roperty consistent therewith." Acierno v. Cloutier, No. 92-385, 1993 WL 215133, at *10 (D. Del. June 9, 1993). The district court reached this conclusion on the grounds that as a factual matter the record plan which was voided in April, 1992 was the subdivision plan approved and recorded in December, 1988, and that the County Council had no discretion whatsoever to act until, at the earliest, the expiration of the five-year sunset period.

First, the district court indicated that by reason of a legal memorandum issued in 1986, the County Council knew that its discretion to void a record plan did not even come into existence until the Planning Department made such a recommendation. The district court concluded that Acierno had a property interest arising from a legitimate claim of absolute entitlement to develop the property consistent with the approved record plan and DPUD zoning classification during the five-year sunset period beginning from the date the plan was approved in December, 1988. In addition, the court concluded that he had a property interest arising from a legitimate claim of entitlement to develop the property without interference from the County after the expiration of the five-year sunset period but before the Planning

43

Department made a formal recommendation to void the record plan. Finally, the court determined that if the repealed five-year sunset provision did not apply, but rather the ten-year sunset provision contained in current County Code § 23-81(18) was applicable, Acierno had a property interest arising from a legitimate claim of entitlement to develop the property without interference from the County because the current ten-year sunset provision contains no language providing the County with authority to void record development plans.

The defendants argue that the district court's analysis is flawed because a landowner does not obtain a vested right to develop property before acquiring a building permit and commencing construction through some ground-breaking activity. Furthermore, they contend that the district court failed to appreciate the important distinction between Acierno's record development plan, originally recorded in 1974, and the subsequently filed subdivision plans which were submitted and recorded in 1986 and 1988. The defendants argue that the five-year sunset provision governs, and that if the five-year sunset provision had been applied from the date the PUD record development plan was approved in 1974, the district court would have concluded that Acierno had no vested right to develop his property based on County law because the County properly exercised its discretion to void the record development plan well after the five-year sunset period expired in 1979.

The district court also found that Acierno had acquired a property interest under the applicable Delaware state law

44

doctrines of vested rights and equitable estoppel. The defendants argued in the district court that Delaware follows the majority rule of state courts and requires a developer to have obtained a building permit and to have commenced some ground breaking activity before a vested right to develop attaches. This rule of vested rights, which is known as the "permit plus rule," was recognized by the Delaware Supreme Court:

> It is generally recognized that the issuance of a building permit does not, alone, confer any right against a later zoning change. Otherwise stated, a permit is not per se protected against a zoning change subsequently adopted. The acquisition of vested rights requires more. As of the time of the zoning change, there must have been a substantial change of position, expenditures, or incurrence of obligations, made lawfully and in good faith under the permit, before the land owner becomes entitled to complete the construction and to use the premises for a purpose prohibited by a subsequent zoning change. This is the rule supported by a great majority of the cases.

Shellburne, Inc. v. Roberts, 224 A.2d 250, 254 (Del. 1966).

Apparently seizing on the Delaware Supreme Court's inclusion of the word "alone," the district court read this passage as indicating that the vested rights rule in Delaware does not preclude property owners from acquiring a vested right to develop as long as there has been a substantial change of position or expenditure, even though they have not obtained a building permit. In support of this interpretation of the Delaware rule, the district court turned to several cases in which the Delaware courts had subsequently applied the vested rights and equitable estoppel doctrines "to a broad range of circumstances." Acierno v. Cloutier, No. 92-385, 1993 WL 215133, at *12 (D. Del. June 9, 1993).

45

In particular, the district court focused on two unreported cases from the lower state courts which it read as refuting the defendants' contention that under Delaware law a landowner has no vested right to continue development after an adverse zoning change unless prior to the change he had obtained a building permit and materially changed his position in reliance thereon. See Wilmington Materials, Inc. v. Town of Middleton, Civ. A. No. 10392, 1988 WL 135507, at *6-9 (Del. Ch. Dec. 16, 1988) (relying on the equitable estoppel and vested rights doctrines, the court enjoined town from enforcing a zoning amendment to prevent the development of a property even though no permit had been issued); New Castle County v. Mitchell, Civ. A. No. 6231, 1981 WL 15144, at *3-7 (Del. Ch. Nov. 25, 1981) (because property owner had begun renovations to make his property suitable for an adult entertainment center and had applied for a building permit before the planned location was rezoned to a classification in which such uses were not allowed, the court determined that the property owner had acquired a vested right and that the principle of equitable estoppel entitled the plaintiff to continue his business at that location).

The district court then discussed an unpublished criminal decision in order to refute the defendants' claim that the above unpublished cases are inconsistent with Shellburne and other relevant Delaware Supreme Court precedent. See State v. Raley, Cr. A. No. S90-07-0002, 1991 WL 18114 (Del. Super. Ct. Feb. 8, 1991) (the state had charged the defendant with violating

46

certain State of Delaware Marina Facility Regulations enacted after he received an administrative permit; citing Wilmington Materials and Mitchell, the court concluded that the vested rights doctrine in Delaware had not given the defendant a constitutional right to develop the marine facility as planned under the prior regulations), aff'd without opinion, 604 A.2d 418 (Del. 1991).

The defendants argue on appeal that the common law rule of vested rights set forth in Shellburne, the "permit plus" rule, is the law of Delaware and a majority of other states. While a minority of jurisdictions confer a vested right at the time application for a building permit is made, a majority of states have adopted the view that a developer must possess a building permit and make a substantial change in position or expenditures, or incur substantial obligations in reliance thereon, in order for rights to vest. 4 Arden H. Rathkopf et al., Rathkopf's The Law of Zoning and Planning § 50.03, at 50-12, 50-25 (4th ed. 1975). Moreover, in some states specific statutes, regulations, or zoning ordinances themselves confer rights upon developers already engaged in developing their property to remain exempt from zoning code or regulations changes for a period of time and to acquire vested rights by subsequent action. Id. § 50.02, at 50-5 to -9.

The defendants further contend that the "permit plus" rule adopted by the Delaware Supreme Court in Shellburne has been reaffirmed by that court and several lower state courts. See Mayor of New Castle v. Rollins Outdoor Advertising, Inc., 475

47

A.2d 355, 360 (Del. 1984) (en banc) (In Shellburne "we held that a property owner has no vested right in a zoning classification, and that a building permit does not, per se, confer any right against a later zoning change. But we ruled that under certain circumstances, such as where an owner had made a substantial change of position or a substantial expenditure, a vested right arises from good faith reliance upon a building permit."); Miller v. Board of Adjustment, 521 A.2d 642, 647 (Del. Super. Ct. 1986) (vested right requires a permit plus a change of position); Willdel Realty, Inc. v. New Castle County, 270 A.2d 174, 178 (Del. Ch. 1970), aff'd, 281 A.2d 612 (Del. 1971); Barrows v. City of Lewes, Civ. A. No. 83C–MR 32, slip op. at 3 (Del. Super. Ct. Mar. 27, 1985) ("The issuance of a building permit is the first prerequisite of such a [vested rights] claim based on financial detriment. A fortiori, when a building permit is not issued, indeed, when an application for such a permit is not made, plaintiff has no right, vested or otherwise, to construct anything on his property."). The defendants argue that the district court was obliged to follow the majority vested rights rule of "permit plus" as articulated by the highest court in Delaware and not as stated in unreported lower court decisions which are to the contrary. See Colantuno v. Aetna Ins. Co., 980 F.2d 908, 909 (3d Cir. 1992) ("[W]hen federal courts are required to interpret or apply state law, we consider and accept the decisions of the state's highest court as the ultimate authority of state law.").

The defendants characterize the district court's holding as improperly recognizing that once a property owner has record development and subdivision plans approved, the municipality is estopped from enacting any zoning changes which would abrogate the developer's vested rights even in the absence of any construction activity or other detrimental reliance. According to the defendants, recognition of such a vested rights doctrine is contrary to Delaware law and other reported land use decisions. See L.M. Everhart Constr., Inc. v. Jefferson County Planning Comm'n, 2 F.3d 48, 52 (4th Cir. 1993). In L.M. Everhart Construction, the plaintiff argued that Planning Commission approval of a subdivision plat created an absolute vested right to develop the parcel as approved. Rejecting this argument, the court stated that it was "tantamount to an assertion that, once approved, a subdivision plat is exempt from all future zoning and subdivision regulations. We can find no court that has adopted such a broad conception of vested rights." Id.[0]

Finally, the defendants also attack the district court's reliance on the doctrine of equitable estoppel for its finding that Acierno had a vested right to develop his property

---

[0]The defendants also argue that the district court's interpretation of the doctrine of vested rights would obviate the need for a statutory provision enacted by New Castle County which addresses the rights of developers at the subdivision approval stage. Under County Code § 23-6, the approval of a subdivision plan protects the planned development against subsequent zoning changes for a period of three years. New Castle County, Del., Code § 23-6. The ordinance voiding Acierno's record development plan was enacted in April, 1992, more than three years after the most recent subdivision plan for the property was approved and filed in December, 1988.

49

as zoned. They contend that an equitable estoppel claim cannot form the basis for a legitimate claim of entitlement so as to support the existence of a property right as required in a § 1983 substantive due process action. In Biser v. Town of Bel Air, 991 F.2d 100 (4th Cir.), cert. denied, __ U.S. __, 114 S. Ct. 182 (1993), the Court of Appeals for the Fourth Circuit addressed whether a state court order of equity estopping a municipality from denying a special exception from a zoning ordinance represented a legal claim of entitlement. The Biser court rejected the plaintiff's argument that a state court order based on equitable estoppel could create a state-law property interest:

> In order to justify substantive due process protection, the legal right to a permit must exist before the local agency denies the permit application--the claim of entitlement must come from "an existing legislative or administrative standard." Dean Tarry Corp. v. Friedlander, 826 F.2d 210, 213 (2d Cir. 1987) (emphasis added). Equitable estoppel does not recognize a pre-existing legal right; rather, estoppel bars a defendant from asserting a legal right that it would otherwise be entitled to enforce, based on that party's conduct.

991 F.2d at 104.

What the above discussion concerning the district court's decision and the defendants' arguments on appeal demonstrates to us is that the vested rights law of both New Castle County and the State of Delaware at the time the County Council enacted Ordinance 91-190 was subject to considerable uncertainty and differing interpretations. While we decline to take a position as to whether the district court's prediction of what the Delaware Supreme Court would hold concerning vested rights, the "permit plus" rule, and equitable estoppel is correct

as a matter of law, we do not believe that Acierno's property interest was "clearly established" under New Castle County and Delaware law at the time Ordinance 91-190 was enacted in 1992. Therefore, even if we were to conclude that the Delaware courts would agree substantially with the district court's analysis of vested rights, Acierno's property interest, if any existed, was not so "clearly established" as to strip the former members of the County Council and Mitchell of their qualified immunity defenses.

In Anderson v. Creighton, the Supreme Court articulated the "clearly established" standard:

> The contours of the [constitutional] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987) (citations omitted). We further clarified that this qualified immunity question involves two governing inquiries:

> First, in order for the governing law to be sufficiently well established for immunity to be denied, it is not necessary that there have been a previous precedent directly in point. . . . The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful. Second, even where the officials clearly should have been aware of the governing legal principles, they are nevertheless entitled to immunity if based on the information available to them they could have believed their conduct would be consistent with those principles.

51

<u>Good v. Dauphin County Social Servs. for Children and Youth</u>, 891 F.2d 1087, 1092 (3d Cir. 1989).[0]

Applying this test in the present case, we need go no further than the first inquiry because we believe that reasonable county officials in Delaware charged with legislating and enforcing the New Castle County zoning scheme in 1992 could have believed that their action of voiding Acierno's record development plan was lawful. We come to this conclusion for several reasons.

First, we agree with the defendants that the highest court in Delaware has provided no clearer discussion of the vested rights doctrine since <u>Shellburne, Inc. v. Roberts</u>, and that case adopts the restrictive, majority rule that vested rights do not attach without a "permit plus."[0] The Delaware Supreme Court has subsequently reaffirmed the "permit plus" rule. <u>See</u> <u>Rollins Outdoor Advertising</u>, 475 A.2d at 360. Furthermore, published decisions of lower state courts in Delaware are to the same effect. <u>E.g.</u>, <u>Miller</u>, 521 A.2d at 647; <u>Shellburne, Inc. v. Conner</u>, 315 A.2d 620, 622 (Del. Ch. 1974), <u>aff'd</u>, 336 A.2d 568 (Del. 1975). Thus, Mitchell and the former members of the County

---

[0]Thus, the doctrine of qualified immunity protects the actions of municipal officials except when they act in a "plainly incompetent" manner or when they "knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986); <u>see also</u> <u>Abdul-Akbar v. Watson</u>, 4 F.3d 195, 205 (3d Cir. 1993); <u>Schrob v. Catterson</u>, 948 F.2d 1402, 1421 (3d Cir. 1991).
[0]Moreover, the case apparently downplays the possibility that vested rights can attach solely through detrimental reliance, absent obtaining a building permit: "The plaintiff concedes that a property owner has no vested right in a zoning classification. <u>This rule is not changed by financial detriment.</u>" <u>Shellburne, Inc.</u>, 224 A.2d at 254 (emphasis added).

52

Council reasonably could have believed they were lawfully acting to void Acierno's record development plan because he did not have a vested right to develop without first obtaining a building permit.

Second, the district court's analysis ultimately rests on a belief that the law of vested rights in Delaware has evolved beyond the "permit plus" rule and now involves a focus on whether the property owner suffered sufficient substantial reliance to have development rights vest. Even though the district court's conclusion was wholly derived from unpublished decisions, we believe that if the Delaware law has truly developed in this manner, the discretionary aspect of the determination of whether rights have vested supports our conclusion that reasonable zoning officials could have believed that enactment of the voiding ordinance was a lawful action. We also note that in the very case the district court relied upon to conclude the Delaware law had developed in this manner, State v. Raley, Cr. A. No. S90-07-0002, 1991 WL 18114 (Del. Super. Ct. Feb. 8, 1991), the property owner had already obtained a permit, which significantly undermines the court's reliance on this case as a source of authority for its reading of the law.

Third, the complex nature of the body of law which underlies the vested rights doctrine leads us to conclude that, in certain circumstances, even municipal officials who act in an unlawful manner may have reasonably believed they were acting lawfully. Commentators have recognized that the subject of vested rights

53

> is one of the most troublesome areas of land use regulation
> . . . . Its solution has required the reconciliation of the
> doctrine of separation of powers with the constitutional
> requirements of substantive due process, a balancing of
> interests of the public as a whole and those of the
> individual property owners, and, in many cases, the element
> of good faith and bad faith and the resort to equity and
> equitable principles.

4 Rathkopf, supra, § 50.01, at 50-2. When making land use decisions which involve the rezoning of a developer's property, local officials must analyze this complex body of law in order to ascertain whether a particular action will clearly abrogate a vested right the developer has acquired. The doctrine of qualified immunity is designed to protect reasonable officials in the exercise of their duties, which in the case of local legislators and administrators charged with making land use and zoning decisions often involves interpreting complicated issues of state and county law.

Therefore, we hold that under the vested rights doctrine as recognized in Delaware, Acierno's property interest, if any in fact existed, was not so clearly established as to defeat the former members of the County Council and Mitchell of their claims to qualified immunity for their actions leading to the enactment of Ordinance 91-190. In addition, we also conclude that the law of equitable estoppel cannot provide the basis for a property interest which supports a substantive due process claim under § 1983 in federal court. Any claim of entitlement must derive from an existing legislative or administrative standard. Biser, 991 F.2d at 104. Although Acierno might be able to proceed directly against the County under a theory of equitable

54

estoppel in order to attack the validity of the rezoning process, it does not support his damage claim brought pursuant to § 1983 in federal court.  Finally, without undertaking a complete analysis of whether Acierno might prevail in attacking the validity of Ordinance 91-190 because the County Council may have relied on an unadopted ordinance as the source for its authority, County law cannot provide the basis for vitiating the defendants' entitlement to qualified immunity because the issue was not settled under County law at the time they acted.[0]

V.

In sum, we will dismiss the appeal filed by the members of the County Council insofar as it involves the present members of the County Council from whom plaintiff Acierno seeks prospective injunctive relief.  With respect to the former members of the County Council, the order of the district court denying their motion for summary judgment on legislative immunity and qualified immunity grounds will be reversed.  The former

---

[0]With respect to this issue we note that we have found no reported state or federal cases which construe the DPUD ordinance provisions at issue in this case.  We also note that the district court did not conclude that the five-year sunset provision was not applicable; it merely concluded that the County Council relied on an unadopted ordinance in voiding Acierno's record development plan.  Our review of this issue leads us to conclude that even if the County Council did rely on an unadopted ordinance, reliance on the appropriate ordinance would have resulted in the same result--application of the five-year sunset provision which allows a record plan to be voided upon the recommendation of the Department of Planning.  We reject any indication in the district court's opinion supporting the principle that the unknowing reliance on unadopted legislation as authority for an action should result in a per se denial of the qualified immunity defense.

members of the County Council are entitled to legislative immunity for their action rezoning Acierno's property by enacting Substitute No. 1 to Ordinance 92-119. They are entitled to qualified immunity for voiding Acierno's record development and subdivision plans by enacting Ordinance 91-190. Finally, the order of the district court denying First Assistant County Attorney Mitchell's motion to dismiss on qualified immunity grounds also will be reversed.